beneficiary) to abrogate the trust and take the property. Here the law of 1893 was in force at the time of the testator's death. The tenure of property, whether real or personal, and the character and nature of the estates that may be created therein, have always been the subject of legislative action. The legislature might forbid the creation of any trust estates in property, or the suspension of the power of alienation for any period whatever, as it has forbidden the suspension of the power of alienation beyond two lives in being. At the time this will took effect it was the law of trusts to apply the income or rents and profits of a trust estate that a trust might be terminated in certain contingencies at the election and by the action of the cestui que trust. When the testator bequeathed his property upon trust, he could bequeath it only upon such a trust as the law permitted, and subject to such regulations and limitations as the legislature had prescribed for such trusts.

There should be judgment in favor of the defendant Shrigley that the executors pay to her one-fifth of the residuary estate of the testator, upon her executing a deed as prescribed in chapter 452 of the Laws of 1893; the costs of all parties to be paid out of the fund. All concur.

---

### EBERT v. LOWENSTEIN.

(Supreme Court, Appellate Division, First Department. June 23, 1899.)

PATENTS—ROYALTIES—CONTRACTS—CONSTRUCTION.

> Defendant agreed to pay plaintiff, as royalty for the exclusive right to manufacture a patented article, five cents for every article manufactured, and "that the royalties he shall pay * * * shall amount in the aggregate, each separate year, to at least $3,000," and plaintiff agreed to continue the license if defendant should make up the deficit in cash if the royalties did not amount to $3,000, and plaintiff was given the option of terminating the license if the annual income of the royalties was less than $3,000. Held, that defendant did not bind himself to make up any deficit.
>
> Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by James J. Ebert against Max Lowenstein. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and O'BRIEN, JJ.

Emanuel Blumenstiel, for appellant.

G. A. Seixas, for respondent.

RUMSEY, J. On the 24th of September, 1894, the parties to this action made a contract, reciting that the plaintiff was in possession of a certain invention for which he had made application for letters patent, and that the defendant desired to secure the exclusive license to manufacture and sell the invention throughout the United States. For the purpose of carrying into effect the desire of the defendant, it was agreed that the plaintiff should grant to him the exclusive

right and privilege to manufacture and sell the invention through-out the United States, which the defendant agreed to do. The defendant further agreed to keep books of account of the articles manufactured and sold, and render monthly statements, and to pay to the plaintiff at the time of the rendition of each statement a royalty of five cents upon each article manufactured. The contract contained the following provision:

"It is further agreed by the party of the second part that the royalties he shall pay unto the party of the first part at the above rate shall amount in the aggregate, each separate year, to at least three thousand dollars ($3,000), and, should the accumulated royalties at the royalty named not reach the sum of three thousand dollars, the party of the second part shall be entitled to continue this license by making up the deficit by payment of cash."

As the result of the first year's business, the royalties amounted to $574.70, and no more, and this action was brought to recover the difference between that sum and the sum of $3,000, which it was claimed the defendant agreed to pay by the terms of the contract quoted above. It was held by the learned justice at trial term that the clause of the contract above quoted was an absolute agreement on the part of the defendant, not only that the royalties should amount in each year to $3,000, but that he would pay to the plaintiff the difference between the royalties actually received and that sum. The correctness of this ruling is the only question presented upon this appeal. The royalty for each article manufactured was to be five cents, and that sum the defendant agreed to pay to the plaintiff by the express terms of the contract. It was clearly the desire of the plaintiff to obtain an income of at least $3,000 a year out of his royalties; but the amount of royalties to be paid was not fixed at that sum, and there is no express agreement on the part of the defendant to pay it. There is no provision in the contract that if the royalties did not reach that sum, and the deficit for any year should be made up by the defendant, he should be at liberty to credit the excess of payment made in any one year upon subsequent royalties. So that, if the contract is to be construed as claimed by the plaintiff, it would require the defendant not only to manufacture the articles, and assume the risk of putting them upon the market and finding that they were desirable, but, in doing so, to practically subject himself to a penalty of a considerable amount in case the parties to the contract should be mistaken as to the desirability of the article. This is not a probable arrangement to have been made. But, whether it is probable or not, the question whether it was made is to be determined solely by a consideration of the words in which the parties saw fit to frame the contract that they did agree upon. In the agreement as quoted the defendant refers to the royalties he shall pay unto the party of the second part. The words "he shall pay" are used here, not by way of an agreement to pay, but by way of a description of the royalties referred to in the preceding clause of the contract providing for the payment of them. The agreement is that those royalties shall amount to $3,000 a year. But there is no agreement to pay that amount in that particular portion of the contract, and the defendant can only be bound in case an agreement can be implied from those words.

There is, however, an actual agreement in regard to payment made in .that clause of the contract, and for that reason there is no necessity of making any implication, because the parties have put in precise terms the arrangement which they sought to arrive at. That arrangement is not that the defendant shall pay in any event the deficit between the sum of $3,000 and the amount of royalties actually earned, but that he shall be entitled to continue the license for another year if he makes up the deficit by payment in cash. It was clearly within the purview of the parties, when they agreed upon that portion of the contract, that the royalties might not actually amount to $3,000 a year, and that there might be a deficit. If they had intended that the defendant should absolutely bind himself to pay that sum, it certainly was not likely that they would have said that, if he paid the deficit, he was entitled to continue the royalty, because, if he actually bound himself to pay the $3,000 absolutely, there could have been no deficit which it was necessary for him to pay to entitle him to continue the royalty. This portion of the contract, therefore, standing alone, as it seems to us, should be construed simply as giving to the defendant the right, in case the royalty upon goods actually sold did not reach the sum of $3,000, to continue the contract in effect by making the deficit good, if he saw fit to do so. This conclusion is strengthened by a subsequent clause of the contract, which provides:

"In the event of the nonfulfillment of the terms of this agreement by the party of the second part, by failing to continually make sales or payments of royalty as herein provided, so that the aggregate income of the party of the first part shall not be less than $3,000, then the party of the first part may, at his option, terminate this license by serving a written notice of his intention so to do, giving the party of the second part thirty days from the receipt of said notice to fulfill the terms of these presents; otherwise, this license to remain in full force and effect during the entire term for which said patent may be granted."

It is clear from this portion of the contract that the parties contemplated that the sales might not be sufficient to make the aggregate income of the licensor $3,000, and, in case that condition of affairs came to exist, they authorized the licensor to put an end to the contract. But this provision of the contract is in direct contradiction to the construction claimed for it by the plaintiff, because, if the defendant was absolutely bound in any event to pay the sum of $3,000 a year to the plaintiff, the condition of affairs could never come to exist that the aggregate income of the party of the first part should be less than $3,000 because of the failure to make sales. The failure to make sales was a matter of no importance, in view of the construction put upon the contract by the plaintiff, because he had the absolute right to the sum of $3,000 in each year, whether there were any royalties or not.

It seems to us that the plain construction of this provision of the contract is that if the royalties arising from sales did not reach the aggregate amount of $3,000, and the defendant did not make up that deficit, so as to entitle himself to retain the contract, then the plaintiff would be at liberty either to permit the contract to stand, receiving such royalties as were actually earned, or to give notice of his intention to put an end to it if he saw fit, in which case the defendant

would be called upon to determine within 30 days whether he should pay enough to make up the full $3,000, or allow the contract to terminate. This construction, as it seems to us, makes the whole contract consistent, and it is the construction which the learned trial justice should have given to it. It was erroneous, therefore, for him to hold that the defendant was under an absolute contract to pay the full sum of $3,000 in each year without regard to the royalties earned.

In view of the conclusion which we have reached, we have not thought it necessary to examine any of the other exceptions taken by the defendant. For this error, the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except PATTERSON, J., dissenting.

PATTERSON, J. (dissenting). This action was brought to recover a balance of moneys claimed to be owing by the defendant to the plaintiff upon a contract in writing. The principal question before us is one relating to the proper construction of that contract as affecting the liability of the defendant. On the trial a verdict was directed for the plaintiff, and from the judgment entered thereon the defendant appeals. The contract was made on the 24th of September, 1894, and it recites that the party of the first part (the plaintiff) was in possession of an invention relating to automatic funnels, for which he had made application for letters patent, and that, the defendant being desirous of securing the exclusive license to manufacture and sell funnels of the plaintiff's invention, the plaintiff granted to the defendant power and privilege, to the exclusion of all others, to manufacture and sell such funnels. The defendant agreed at once to manufacture the funnels, and to use his best endeavors and facilities, and constantly continue to make all possible sales of funnels throughout the United States, to keep books of account of all funnels manufactured and sold, and render monthly statements from said books to the plaintiff, and to pay a royalty of five cents upon each funnel manufactured. The contract then contains this stipulation, viz:

"It is further agreed by the party of the second part [defendant] that the royalties he shall pay unto the party of the first part at the above rate shall amount in the aggregate, each separate year, to at least $3,000, and, should the accumulated royalties at the royalty named not reach the sum of $3,000, the party of the second part shall be entitled to continue this license by making up the deficit by paying cash."

The contract also contained this further stipulation, viz.:

"It is further agreed and mutually understood that, in the event of the nonfulfillment of the terms of this agreement by the party of the second part, by failing to continually make sales or payments of royalty as herein provided, so that the aggregate income of the party of the first part shall not be less than $3,000, then the party of the first part may, at his option, terminate this license, by serving a written notice of his intention so to do, giving the party of the second part thirty days from the receipt of said notice to fulfill the terms of these presents; otherwise, this license to remain in full force and effect," etc.

The amount sued for in this action is a balance of $3,000 claimed to be due on the 24th of September, 1895; that is, for the first year

of the currency of this contract. It is not disputed that during that year the defendant manufactured funnels. It is not claimed that the plaintiff manufactured any. It was not asserted by the plaintiff that he had a patent. All that he owned was the invention. The parties were not contracting with reference to an actually issued patent; nor is there anything contained in the agreement by way of representation, warranty, or otherwise that a patent should be secured. The obligation of the defendant was to pay royalties upon the manufactured article invented by the plaintiff, and not upon articles patented by the plaintiff. The stipulation respecting the payment of "royalties" to the extent of $3,000 a year is a positive promise that the plaintiff shall receive that much so long as the contract endures. The provision that, if the royalties shall not reach the sum of $3,000, the party of the second part should "be entitled to continue" the license by making up the deficit by payment in cash cannot be construed as an exclusive alternative for the nonpayment of a deficiency in the $3,000 for any one separate year of the existence of the contract. So long as that contract continued, the defendant was bound for each separate year to pay at least the sum of $3,000 as and for royalties. The obligations of the parties are fixed from year to year, and the provision with respect to the continuance of the license, by making up the deficit by payment in cash, was not agreed upon as the only consequence of a failure of the defendant to make the payment; for, by the subsequent provision of the contract above quoted, it is declared that the failure of the defendant to make payments, so that the aggregate income of the plaintiff shall not be less than $3,000, gave to the plaintiff the option to terminate the license by serving a written notice of his intention so to do, and allowing the defendant 30 days' time in which to perform his contract by making payment. The established relations concerning the continuance of the contract, the exercise of an option by the plaintiff to terminate it, and the notice necessary to terminate it show that the arrangement respecting the payment of this $3,000 of royalty was an arrangement from year to year, and that at the expiration of each year an indebtedness arose from the defendant to the plaintiff for any deficiency in the annual income intended to be secured to the plaintiff of $3,000. If such a deficiency existed at the end of any year, then the future status of the defendant as to the contract was to be determined at the option of the plaintiff. On the 24th of September, 1895, the defendant owed the plaintiff the balance of moneys claimed in the complaint, under his covenant to pay it.

The case is not within Wing v. Clock Co., 102 N. Y. 531, 7 N. E. 621; for here the parties have not made the forfeiture of the contract the only remedy open to the plaintiff, nor the only consequence of the defendant's failure to perform.

It is not necessary to consider any of the exceptions in the case. The refusal of the court to take evidence that the plaintiff had failed to obtain a patent was not error. It was shown that the patent had been applied for, and the record discloses that the application proceedings were continued for two years, and until some time in 1896. Nor was it error to refuse to allow on the trial an amendment of the

answer. The nature of the amendment proposed was so radical as
to constitute an entirely new defense.

The judgment and order should be affirmed, with costs.