(55 Misc. Rep. 601)

## CUMMINGS v. STANDARD HARROW CO.

(Supreme Court, Special Term, Cortland County. April 10, 1907.)

PATENTS—CONTRACTS—ROYALTIES—EFFECT OF TERMINATION.

Where a contract allowing defendant to make and sell machines containing plaintiff's inventions required defendant to pay royalties on at least 1,000 machines in each year during the life of the contract, and provided that the agreement should terminate if defendant failed to pay the minimum royalties, the provision for the termination of the contract was not exclusive, and by electing to terminate for failure to make the minimum payment plaintiff did not waive payment according to the contract during its continuance.

Action by Charles J. Cummings against the Standard Harrow Company. Judgment for plaintiff.

Edward C. Hard (Simon Fleischmann, of counsel), for plaintiff. Robinson, Martin & Jones, for defendant.

MILLER, J. The plaintiff, the owner of certain letters patent for improvements in potato diggers and the inventor of certain other improvements not then patented, entered into a written contract with the defendant, granting to the latter the sole and exclusive right and license to make and sell the machines containing said inventions and improvements, in consideration whereof the defendant agreed to pay a royalty of $5 on each of the first 5,000 machines manufactured and sold, a royalty of $4 on each of the second 5,000 machines manufactured and sold, and thereafter a royalty of $3 on each machine. The fourth clause of said contract provides as follows:

"Said party of the second part agrees to pay said party of the first part royalties on at least one thousand potato diggers in each calendar year during the continuance of this agreement, and it is mutually agreed that, if said party of the second part shall fail to pay such minimum royalty for any one year,

then this agreement shall cease and terminate at the end of such year, and all rights hereby conveyed to said party of the second part shall revert to said party of the first part."

The defendant did not make and sell as many as 1,000 machines in any year during the continuance of the contract, but at the end of each year, up to and including the year 1903, the plaintiff waived in writing the payment of royalties on 1,000 machines and his right to cancel the contract. He refused to make such waiver for the year 1904, and, the defendant having failed to make payment on 1,000 machines for the year, he demanded such payment and notified it of his election to treat the contract as terminated. This action is brought to recover the difference between the royalties actually paid for the year 1904 and the sum of $5,000, the stipulated royalties on 1,000 machines.

The case turns on the construction of clause 4 of the contract, quoted supra. It will be noted that said clause contains two distinct and absolute agreements: (a) An agreement of the defendant to pay royalties on at least 1,000 machines in each year; (b) an agreement that the contract shall cease and terminate if the defendant fail to pay such minimum royalties. These two agreements are expressed conjunctively, not in the alternative. Each contains its own words of agreement. The language used is clear and unequivocal. If the parties had intended that the termination of the contract should be the only consequence of a failure to pay royalties on a stipulated number of machines each year, they could easily have expressed that intention; and while the court might lean to a construction having that effect, if the language used were doubtful, it cannot substitute a contract of its own making for one clearly expressed by the parties, simply because it may deem the terms of the latter too onerous. If the machine was not salable, the defendant made an unwise contract. If the failure to market the minimum number specified was due, not to the fault of the machine, but to the fault of the defendant, the plaintiff wisely provided against an inadequate return for the exclusive right to use his invention. Such considerations might be important in construing doubtful language, but are of no moment whatever in determining the effect of language too plain to admit of construction. I know of no rule of law that a provision for forfeiture, or, to be more accurate, for the termination of a contract upon default, is exclusive, unless the parties have so stipulated, or unless that intention can be gathered from their stipulations.

In this case we have an absolute promise to pay royalties on 1,000 machines in each year. The parties doubtless specified the minimum number of machines, instead of the minimum gross amount to be paid, because of the fact that the contract provided a diminishing scale of royalties, and I am unable to perceive how the defendant can answer a suit upon its absolute promise to pay by saying that the contract might be terminated upon its default. The defendant's right to continue the contract was not in terms conditioned upon its payment of the minimum royalties specified. It agreed absolutely to pay said royalties, and if it made default the contract was terminated at the option of the plaintiff; but such termination was in futuro. The contract was not forfeited in toto, but all the rights of the parties accruing under it up to the time of

such termination remained in full force and effect, and the fact that the plaintiff elected to terminate the contract for the future did not satisfy the defendant's obligation to pay the stipulated sum per year during the life of the contract. The defendant licensee saw fit to take its chances of being able to market 1,000 machines a year, and agreed absolutely to pay royalties on at least that number. Such agreement cannot be regarded in any sense as providing a penalty. It was an agreement to pay at least that sum for the exclusive right granted it, and the mere fact that the contract is terminated upon its default is no· answer to its obligation to pay the contract price for the right which it enjoyed. Upon reason, therefore, I am forced to the conclusion that the provision for the termination of the contract was not exclusive, and that by electing to terminate it the plaintiff did not waive the payment of the contract price during its continuance.

The cases do not, as claimed by the defendant, require a different conclusion. In the case of Wing v. Ansonia Clock Co., 102 N. Y. 531, 7 N. E. 621, the agreement was in the alternative, the defendant agreeing to pay a stipulated sum annually, or else to forfeit its right under the license. In Ebert v. Loewenstein, 42 App. Div. 109, 58 N. Y. Supp. 889, affirmed on opinion below 167 N. Y. 577, 60 N. E. 1110, it was held that there was no absolute agreement to pay the minimum amount stipulated, and that such an agreement would not be implied from the language used. In the case of Corbet v. Manhattan Brass Co., 93 App. Div. 217, 87 N. Y. Supp. 768, there was no absolute agreement to pay a stipulated minimum sum, and there were other provisions of the contract showing that it was optional with the defendant whether it would continue the manufacture and sale. It is clear that the absence of any express words agreeing absolutely to pay the minimum sum stipulated was deemed controlling by the Court of Appeals; for the case was decided in that court upon the authority of Wing v. Ansonia Clock Co. and Ebbert v. Loewenstein, supra. See Daly v. Reineldt, 183 N. Y. 548, 76 N. E. 1093. The precise question here has been at least once squarely decided by the Court of Appeals. Born v. Schrenkeisen, 110 N. Y. 55, 17 N. E. 339. The agreement in that case was expressed in the following language:

"We further agree to pay royalty on not less than 600 chairs a year, and should we fail in this the agreement shall be null and void."

The trial court found that the writing did not express the true agreement, which was that, if the number of chairs manufactured did not amount to 600 a year, the agreement should be null and void. The Court of Appeals held that, as the agreement stood unreformed, the plaintiff was entitled to recover, but that upon the findings of the trial court the defendant was entitled to a reformation of the contract, and accordingly modified the judgment so as to provide such reformation. The agreement at hand was, not that the contract should be null and void, but that it should terminate. It is impossible to distinguish the case in hand from Hamilton v. Park & McKay Co., 112 Mich. 138, 70 N. W. 436, and the reasoning of the court in that case seems to me conclusive in support of the plaintiff's right to recover in this.

The defendant argues that, inasmuch as the contract could not have been terminated if it had paid the minimum royalties stipulated, the plaintiff could not, after default, terminate the contract without waiving the payment of such royalties. This ignores the fact that, if the payment had been made, there would have been no default. The agreement to pay the minimum royalties was absolute. By making default the defendant incurred the penalty of forfeiture; but such default did not excuse it from performing its contract obligations. The defendant contracted to pay royalties on at least 1,000 machines each year for the exclusive right to use the plaintiff's invention. It has enjoyed such right, and must therefore pay the stipulated sum, notwithstanding the plaintiff has elected to avail himself of the right to terminate the contract. See Hamilton v. Park & McKay Co., supra.

The plaintiff should have judgment.