(153 App. Div. 277.)

### FAIRCHILD et al. v. CITY & COUNTY CONTRACT CO.

(Supreme Court, Appellate Division, Second Department.  November 1, 1912.)

1. RAILROADS (§ 72*)—PURCHASE OF LAND—CONDITIONS IN CONTRACT—CONSTRUCTION.

A contract to purchase land and take an option to purchase other land for railway purposes provided that the railway is "proposed to be constructed by the party of the second part," and that it "will, when it shall have constructed such railway as now laid out, construct, maintain,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and operate, or cause to be constructed, maintained, and operated, a station on the line of said railway." It further stated that the consideration for the reduced price was the construction of the railway and station. *Held*, that such contract amounts at least to an express agreement to construct, maintain, and operate a station on the line of the railroad as then laid out, so that the obligation of the railway company is not only to build a station, but the railway.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 168–178; Dec. Dig. § 72.\*]

2. CONTRACTS (§ 168\*)—CONSTRUCTION—GENERAL RULES.

A contract must be construed so as to include, not only what the parties actually wrote or said, but also all things which the law implies as a part of it, except where the express contract and that implied by law relate to the same subject-matter, and the provisions of the express contract were intended to control and supersede those which would be raised by implication, when the rule will not apply.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 751; Dec. Dig. § 168.\*]

3. FRAUDS, STATUTE OF (§ 49\*)—CONTRACTS TO BE PERFORMED WITHIN A YEAR.

An option contract for the purchase of land at a reduced price, in consideration of the construction of a railway and railway station thereon, which specified a date about five years later as the last date within which the option might be exercised, and the road and station built, is not void as within Consol. Laws 1909, c. 41, § 31, providing that an agreement which by its terms is not to be performed within a year from its making, unless it or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith, or his lawful agent, where it contained no requirement that action should be delayed more than a year, and the work was not of a character that the court could, in the exercise of its power of judicial notice, determine to be of a character that could not be completed in that time.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 74; Dec. Dig. § 49.\*]

4. RAILROADS (§ 72\*)—BREACH OF CONTRACT—REMEDIES—PROVISIONS OF CONTRACT.

A party injured by a breach of a contract may recover all damages which flow directly and naturally therefrom, and are certain in their nature and in respect of the cause from which they proceed, unless the contract specifically provides for the consequences of a breach, when the remedy provided is exclusive, so that where a contract conveying lands and giving an option to convey others at a reduced rate in consideration of the building of a railway line and station gave the grantor a right to have a reconveyance, but did not specifically provide that a reconveyance should be the exclusive remedy upon a failure to build the railroad, the grantor is not limited to that remedy.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 168–178; Dec. Dig. § 72.\*]

5. RAILROADS (§ 72\*)—CONVEYANCE OF LAND—CONDITIONS—BREACH—RIGHT TO ELECT BETWEEN REMEDIES.

A contract giving an option to purchase land for a railroad depot recited that land for a right of way had already been purchased, and that "the price at which said property *is sold* by the party of the first part is a reduction from the true value," and also that, "in consideration for such reduction in the price of the property *hereby conveyed*," the party should construct and maintain the station "on the line of said railway." It further provided that, in case the station was not constructed on the premises ready for use as a railway station on a certain date, the party conveying should have the right to repurchase from the party of the second part all property conveyed to that time. *Held*, that the contract

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by its terms displays that the reduction in price was made on the land conveyed as well as that upon which an option was given, and the rights of the parties could not be satisfied by the mere cancellation of the contract, and a reconveyance of the property conveyed, so that while the grantor could either have a reconveyance upon the payment of the sum provided for, or damages for the breach, the grantee could not elect between the two methods of settlement.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 168–178; Dec. Dig. § 72.*]

Appeal from Special Term, Westchester County.

Action by John F. Fairchild and others against the City & County Contract Company. From an interlocutory judgment overruling defendant's demurrer to the complaint, it appeals. Affirmed, with leave to withdraw and answer.

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and RICH, JJ.

Ralph Polk Buell, of New York City, for appellant.

Arthur M. Johnson, of Mt. Vernon, for respondents.

BURR, J. In May, 1906, James L. Reynolds was the owner of a tract of land situated in the village of Pelham Manor. On June 25, 1908, he conveyed to John F. Fairchild an undivided one-fourth interest of that portion of said tract still remaining in his ownership, together with a "one-fourth beneficial interest" in a certain contract previously made with defendant. James L. Reynolds having died, this action is brought by his personal representatives and Fairchild to recover damages for a breach of said contract. This appeal comes from an interlocutory judgment overruling defendant's demurrer, based upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

On May 23, 1906, Reynolds, for $1 and other valuable considerations, conveyed to defendant a strip of land 100 feet wide, running through the tract above referred to. At that time, to the knowledge of both parties, the New York, Westchester & Boston Railway Company proposed to construct an extension of its railroad through the village of Pelham Manor, and defendant was actually engaged in the construction thereof and the purchase of the right of way therefor through said village. The conveyance described the property by reference to a map attached thereto, entitled:

"Map of the Right of Way of the New York, Westchester & Boston Railway Company through the Spreen Property, Belonging to James L. Reynolds, Village of Pelham Manor, Town of Pelham, Westchester County, New York."

Incorporated in the conveyance were the following provisions:

"The said party of the first part also hereby gives to the party of the second part the right or option to purchase by March 1, 1911, lots 81, 82, 83, and 84 as shown on a certain map, entitled 'Sketch, Subdivision No. 2, Spreen Property, Belonging to James L. Reynolds, Pelham Manor, New York,' made by John F. Fairchild, civil engineer, and dated February 21, 1906, upon the payment to the said party of the first part of $1, the other conditions in this conveyance constituting valuable consideration in addition to $1 for the purchase of said lot; such lots to be conveyed subject to the same restrictions

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and agreements as herein contained. It is further agreed that the price at which said property is sold by the party of the first part to the party of the second part is a reduction from the true value of the property, which reduction the party of the first part has consented to, in consideration of the benefit which the construction of the railroad and of the railroad station proposed to be constructed by the said party of the second part will be to the remaining property of the party of the first part, and in consideration for such reduction in the price of the property hereby conveyed it is agreed by the party of the second part that it will, when it shall have constructed said railway as now laid out, construct, maintain, and operate, or cause to be constructed, maintained, and operated, a station on the line of said railway, which station shall be located upon lots Nos. 81, 82, 83, and 84, as shown on said subdivision map, hereto annexed, and for such purpose shall, on the completion of said railway construction, exercise its option to purchase said lots 81, 82, 83, and 84 and said station shall be constructed and ready for use as such, on or before March 1, 1911. And it is further agreed by and between the parties hereto, as a further consideration for said reduced price at which said premises have been sold, that in case said station is not constructed on said premises and ready for use as a railway station, and used as such on or before March 1, 1911, the party of the first part shall have the right to repurchase from the party of the second part said parcel hereby conveyed and said lots, in the event that the same shall have been theretofore conveyed to said party of the second part, and, if not so conveyed, all rights therein derived by the said party of the second part, by virtue of said option or otherwise, shall cease and determine upon payment by the party of the first part to the party of the second part of sixteen thousand (16,000) dollars, in cash."

Defendant has not constructed, maintained, and operated either the said railroad or the railroad station. It has refused to accept a conveyance of lots 81–84, inclusive, on said map. It has stated that the route of the railroad through the village of Pelham Manor has been abandoned, and that neither the said railroad station nor the road itself would ever be constructed. The complaint alleges:

"That the said parcel of land so conveyed to the defendant extends through the said tract of land owned as aforesaid in 1906 by the said James L. Reynolds, and the construction of the said railroad thereon and of the said railroad station upon said lots Nos. eighty-one (81), eighty-two (82), eighty-three (83), and eighty-four (84), as shown on said map entitled 'Sketch, Subdivision No. 2, Spreen Property,' would have greatly improved and benefited the residue of the said tract of land, and would have largely increased its value and its market price, as the defendant well knew."

[1] Among other things, defendant contends that the damages claimed are incapable of ascertainment, for the reason that while constructing a railroad, and also constructing, maintaining, and operating a station on the line of said railroad, might enhance the value of the remainder of plaintiffs' property, and failure to do these things might result in damage, it is impossible to determine what damage would result from a failure to do the latter only, and that this is the extent of defendant's obligation. We think the premise is unfounded. The contract contained in the deed describes plaintiffs' predecessors, to whose rights they have succeeded, as the "party of the first part," and defendant as the "party of the second part." It contained clauses to the effect that the railroad is "proposed to be constructed by the party of the second part," and that the party of the second part "will, when *it* shall have constructed said railway

as now laid out, construct, maintain, and operate, or cause to be constructed, maintained, and operated, a station on the line of said railway." It further states that part of the consideration moving to the party of the first part to said contract is "the benefit which the *construction of the railroad* and of the *railroad station* proposed to be constructed by the said party of the second part will be to the remaining property of the party of the first part." In view of the surrounding circumstances, as set forth in the complaint above referred to, we think that this was in effect an express agreement to construct both railroad and railroad station. At least, it cannot be denied that there was an express agreement to construct, maintain, and operate a station on the line of *said* railway, namely, a railway *as then laid out.*

[2] A contract must be construed so as to include, not only what the parties actually wrote down or said, but also all things which the law implies as part of it (9 Cyc. 582), subject to the qualification that when the express contract and that implied by law relate to the same subject-matter, and when the provisions of the express contract were intended to control and supersede those which would be raised by implication, the rule does not apply. Commercial Bank v. Pfeiffer, 22 Hun, 327, affirmed 108 N. Y. 242, 15 N. E. 311. It is possible that a station building might be constructed without an adjoining railroad, but it would not then be a station "on the line" of a railroad, and it could not be "maintained and operated" without such line. The express contract to construct such a station necessarily involved also the construction of a line of railroad. If necessary, we might read into the contract an agreement to build such railroad "in order to reach a result which the unequivocal acts of the parties indicated that they intended to effect." Genet v. Delaware & H. C. Co., 136 N. Y. 593, 32 N. E. 1078, 19 L. R. A. 127.

Appellant further contends that, if obligated to construct a railroad, its failure to do so is without fault on its part, because it had no power to prevent the railroad company from changing its route without its consent. For the purposes of this appeal it is sufficient to say that it does not appear that such change was made without its consent. It may have been the inducing cause thereof.

[3] There is no force in its contention that the contract to construct a railroad and the railroad station, or either of them, is void because by its terms it is not to be performed within one year from the making thereof. General Laws, c. 47 (Laws of 1897, c. 417) § 21; Consolidated Laws, c. 41 (Laws of 1909, c. 45) § 31. March 1, 1911, was the last date within which defendant might perform its obligation. There was nothing which required it to delay action until that time, or beyond the 23d of May, 1907, one year after the execution of the contract. There is no allegation that both railroad and station could not have been constructed within such period, and the work is not of such a character that the court can take judicial notice that by no possibility they could be. Warren Chemical & Manufacturing Co. v. Holbrook, 118 N. Y. 586, 23 N. E. 908, 16 Am. St. Rep. 788; Kent v. Kent, 62 N. Y. 560, 20 Am. Rep. 502.

[4, 5] Appellant further contends that its failure to comply with its contract does not entitle plaintiffs to maintain an action for damages, but that their sole right is to compel a reconveyance of the strip of land already conveyed and a cancellation of defendant's option to purchase the four lots upon which the station building was to be constructed. The general rule is that a party injured by a breach of contract is entitled to recover all damages suffered which flow directly and naturally therefrom and are certain in their nature and in respect of the cause from which they proceed. Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209, 31 N. E. 1018; Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58; Meyer v. Haven, 70 App. Div. 529, 75 N. Y. Supp. 261. This rule is subject to the further qualification that, when the parties by their contract specifically provide for the consequences of a breach, the remedy thus provided is exclusive. Read v. Fox, 119 App. Div. 366, 104 N. Y. Supp. 251. The agreement between the parties as to reconveyance in the event of a breach is not thus specific in its character, and nothing less than this will exclude the application of the common-law rule.

Appellant's contention rests upon the claim that the consideration for defendant's promise of construction, whether of a railroad station or a railroad, or both, was a reduction in the price of the four lots subsequently to be conveyed, and that the parties had agreed that defendant's option thus to purchase them might be terminated for nonperformance of its agreement. It may be doubted whether even this would be sufficient to bar plaintiffs' claim. Bezer v. Hall Signal Co., 22 App. Div. 489, 48 N. Y. Supp. 203; Cummings v. Standard Harrow Co., 55 Misc. Rep. 601, 105 N. Y. Supp. 646. But the fact is otherwise. The instrument recites that:

"The price at which said property *is sold* by the party of the first part to the party of the second part is a reduction from the true value of the property."

Strictly speaking, the only property which was then "sold' was the 100-foot strip. As to the rest there was but an executory agreement to sell. But if the meaning of this phrase, standing alone, is ambiguous, and if, construing these words apart from the context, it could be held that the word "sold" applied alike to the railroad strip and the station site, all ambiguity is removed when we pass to the succeeding clause:

"And in consideration for such reduction in the price of the property *hereby conveyed*."

Clearly the only property "hereby conveyed" is the railroad strip. If defendant's contention is correct, this strange result would follow: Although no railroad was built upon this strip, defendant could demand a conveyance of the four lots, 81 to 84, inclusive, without paying anything therefor, construct thereon a building which it termed a railroad station, and retain title to both pieces of land, although part of the very consideration moving to plaintiffs' predecessors in title for these conveyances, viz., the benefit to their remaining lands from the construction of a railroad and the maintenance and operation

of a railroad station thereon, was wanting. Again, plaintiffs' right to a reconveyance of the railroad strip and the station site, if that had been conveyed, or to a reconveyance of the former and the cancellation of defendant's option as to the latter, if it had not been, was not dependent solely upon defendant's breach of contract. In addition, plaintiffs were required to pay the sum of $16,000.

As the case now stands, the contract between the parties is partly executed and partly executory. If it were the latter only, there might be more force in the contention that defendant's failure to perform its contract simply put an end to the executory contract through which it derived its right to purchase. But if the respective rights and obligations of the parties should be limited to the provision for reconveyance, we have a case where not only the obligations of an executory contract terminate, but a new contract of purchase and sale arises. Whether the sum which plaintiffs would be required to pay was more or less than the actual value of the railroad strip at the time of the conveyance, or of the railroad strip and the station site together, does not appear. No one knew, nor could any one certainly foretell, what the value of one or both of these pieces would be at the date when the breach occurred. Although the value of plaintiffs' entire tract may be less to-day than it would have been had defendant performed its contract, it may be that the total value of the strip and the site at the present time is considerably greater than $16,000. The fair construction of the entire agreement seems to be that plaintiffs had the option to repurchase the entire property at the price of $16,000, if it had already been conveyed, or at the same price to repurchase so much as had been conveyed, and cancel defendant's option to purchase the residue, or to waive this right and recover its damages. But this choice belonged to plaintiffs, and not to defendant. The remedies were alternative, and not exclusive. Wing v. Ansonia Clock Co., 102 N. Y. 531, 535, 7 N. E. 621.

It follows that the interlocutory judgment must be affirmed, with costs, but with leave to appellant, within 20 days after service of a copy of the order to be entered herein, to withdraw its demurrer and answer the complaint, upon payment of the costs included in the interlocutory judgment and the costs of this appeal. All concur.