[L. A. No. 3081.   Department One.—April 30, 1913.]

## CARL F. CAPELL, Respondent, v. CAPELL SALES COM-PANY (a Corporation), Appellant.

CONTRACT—GRANT OF RIGHT TO MANUFACTURE AND SELL INVENTION—ADVANCES ON ROYALTIES—CONSTRUCTION OF CONTRACT.—The contract in question granted the exclusive right to manufacture and sell an invention, which it recited was secured by letters patent of the United States, and for which the grantor intended to apply for letters patent in Canada, for the full terms of such United States patent, and for the full term of the Canadian patent when obtained, provided the grantee should sell the same to a specified extent annually, in consideration whereof the grantee agreed to pay the grantor a fixed royalty for the articles sold, for which settlements were to be made quarterly, and to advance to the grantor a stated amount per month on account of the royalties to be earned, which amounts were to be deducted from the royalties on the date of quarterly settlements.   Other terms of the contract authorized the grantee to continue it in force upon the payment of the royalties guaranteed, whether the required number of articles were sold or not, and provided that deficiencies of any one year as to the volume of guaranteed royalties might be made up in a following year, and the excess of sales of one year might apply as a credit to the volume of guaranteed royalties in any following year.   It also provided that upon the failure of the grantee to perform, the grantor could terminate the contract, at his option, but that such cancellation should not relieve the grantee from the payment of any obligation thereunder.   *Held*, that the provision for the payment of the stipulated sum monthly, as an advancement on the royalties to accrue on account of the articles thereafter to be sold, was in the nature of a guaranty that the grantee would make and sell a sufficient number of the articles to make the royalties average at least that amount monthly during the life of the contract, and that if the required number of articles to make that sum as royalties was not sold and paid for, the payment of advances would not be thereby excused.

ID.—RECITALS — INTENT TO APPLY FOR FOREIGN PATENT—CONDITION PRECEDENT OR CONCURRENT.—The recital in the contract that the grantor intended to apply for letters patent on the invention in Canada, coupled with the grant of the right to manufacture and sell the article for the full term of the Canadian letters patent when obtained, did not create an agreement to apply for or obtain a Canadian patent, or impose any obligation upon the grantor the performance of which was either a condition precedent which he

must first fulfill, or a condition concurrent which he must be able to fulfill, before the obligation to pay the advances would become due, within the meaning of section 1939 of the Civil Code.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. D. Murphey, Judge presiding.

The facts are stated in the opinion of the court.

C. L. McFarland, and Fred N. Arnoldy, for Appellant.

George E. Harpham, for Respondent.

SHAW, J.—The defendant appeals from the judgment upon the judgment-roll alone.

The plaintiff obtained a judgment against the defendant for four hundred and fifty dollars, as the amount due him upon a contract with A. G. Herron & Co.  Before entering upon the performance of the contract Herron & Co. transferred all of its right thereunder to the defendant, Capell Sales Company, which latter corporation thereunder assumed and agreed to perform the obligations of Herron & Co., all of which was done with the consent and approval of the plaintiff.

The contract was made on October 11, 1909.  It begins by reciting that Capell has obtained United States letters patent, No. 924037, for a certain gas iron, "and also intends to apply for letters patent on said iron in Canada."  It then declares that Capell thereby grants to Herron & Co. "the exclusive right to manufacture and sell gas irons as described in the United States letters patent during the full term of said patent and for the full term of the Canadian letters patent when obtained, providing said Herron & Co. shall sell or cause to be sold gas irons to the extent as follows: 7,200 irons during the first, 12,000 irons during the second, 15,000 irons during the third years of this contract and 20,000 irons annually thereafter."  In consideration thereof Herron & Co. agreed to pay Capell a royalty on each gas iron sold at the rate of twenty-five cents for irons of twelve pounds weight or less, and fifty cents for irons over that weight.  Settlements for royalties upon irons sold and paid for were to be made quarterly.  A subsequent clause of the contract is as follows:

"Said Herron & Co. agree to advance said Capell the sum of $150.00 per month from date of contract, Oct. 11, 1909, on account of the royalties to be earned under this contract, which monthly payment shall be deducted from said royalties on date of quarterly settlements."

The case depends upon the question whether or not this promise to pay is absolute and unconditional, or is subject to deduction in case the irons sold were not sufficient to make up the amount of one hundred and fifty dollars per month as royalties thereon. As bearing upon the interpretation of the contract in this particular certain other clauses are material. The first one is as follows:

"It is agreed that Herron & Co. shall have the right to continue this contract in force and effect upon the payments of royalties guaranteed whether the required number of irons are sold or not."

Following this is a provision that if Herron & Co. failed to perform the contract in any respect Capell, at his option, could terminate the contract upon written notice, allowing six months for the closing up of the business, but declaring that "the cancellation of this contract shall not relieve said Herron & Co. from payment of any obligation due hereunder." It then proceeds with the following:

"It is agreed that the deficiency of any one year as to volume and guaranteed royalties, may be made up in the following year of contract and that the excess of sales of any one year shall apply as a credit as to volume or guaranteed royalties in any following year or years."

There are other provisions of the contract whereby Capell was to be employed as manager and salesman of Herron & Co., during the lifetime of the agreement, at a compensation of ten cents for each iron sold by the company. Also that Herron & Co. should begin the manufacture and sale of the irons within thirty days from the date of the contract and should thereafter prosecute such manufacture and sale diligently. The complaint alleges that the defendant failed to render an account of the irons sold and that it failed to diligently prosecute the manufacture and sale thereof to plaintiff's damage in the sum of five thousand dollars, in addition to the ten cents for each iron sold to be paid as a compensation for his services. The prayer is for an accounting of

irons sold and for judgment for the sum found due and the
damages, in addition to the four hundred and fifty dollars
alleged to be due for advance royalties for the months of
July, August, and September, 1910. Upon the trial, however,
the plaintiff withdrew his claim for the five thousand dollars
damages. The court made no findings with respect to the
right of the plaintiff to the ten cents per iron as compensation
for services as manager and salesman. Of this the appel-
lant of course does not complain. The only matter in contro-
versy therefore is the right of the plaintiff to recover the four
hundred and fifty dollars as advancements on royalties.

From the provisions of the contract above stated, we think
it is clear that the obligation of Herron & Co. to pay to Capell
one hundred and fifty dollars a month, as an advancement
on the royalties to accrue to Capell on account of gas irons
thereafter to be sold, was in the nature of a guaranty that
Herron & Co. would make and sell a sufficient number of
irons to make the royalties average at least one hundred and
fifty dollars a month during the life of the contract, that if
the required number of irons to make that sum as royalties
was not sold and paid for, the payment of the advances
would not be thereby excused, Capell would be under no obli-
gation to refund the deficit, and that the obligation to make
the advances was absolute and unconditional. This being so,
the plaintiff was entitled to recover the unpaid advances and
the judgment of the court below was correct.

The words in the opening part of the contract "providing
said Herron & Co. shall sell or cause to be sold gas irons,"
to the numbers stated, in connection with the immediate con-
text, perhaps do not, in the absence of more explicit terms
of forfeiture, express a condition subsequent for which the
grant could be forfeited. But they clearly express an under-
taking by Herron & Co. to sell the stated number of irons
each year. The clause giving the right to Herron & Co. to
keep the contract in force, although the required number of
irons were not sold, while paying "the royalties *guaranteed,*"
the provision that the termination and cancellation of the
contract by Capell should not relieve the other party from
any obligation due thereunder, and the agreement that the
deficiency or excess in any year "as to volume and *guaranteed
royalties,*" could be made up or credited as the case might be,

in any following year or years, all show that the agreement to advance one hundred and fifty dollars a month upon the royalties to accrue was intended and understood to be a guaranty that at least that amount should accrue and as a positive agreement to pay it. The subsequent provisions amount to a conventional interpretation of the previous clause. There is a final clause which gives Herron & Co. the privilege of canceling the contract at any time. This relieves the contract from the charge of harshness so far as Herron & Co. is concerned, since it or its successor, by exercising this privilege if the sales fell off, could immediately avoid the payment of any advances in the future.

The defendant cites the cases of *Ebert* v. *Lowenstein*, 42 App. Div. 109, [58 N. Y. Supp. 889], and *Wing* v. *Ansonia Clock Co.*, 102 N. Y. 531, [7 N. E. 621], as authority for the contrary interpretation. Upon examining these cases, we find that the contracts there under consideration were materially different with respect to this feature from the one here involved. In the Ebert case there was no positive agreement to pay a certain sum as royalties, and the amount named as the amount to be paid was coupled with the condition that if the amount earned did not reach the sum, the only consequence would be that the party should be entitled to continue the right to sell by making up the deficit in cash. In the Wing case the agreement was in the alternative, that the party should pay a certain sum as royalties each year, or, failing to do so, should forfeit its right, at the election of the other party. The court held that the only effect of a failure to pay the agreed amount was to give the other party an immediate right to exercise its option and declare a forfeiture. The cases are clearly distinguishable from the one at bar.

The defendant contends further that under this contract the plaintiff is not entitled to recover the advance payments agreed on unless he shows that he applied for and diligently endeavored to procure the Canadian patent. In support of this position it relies upon section 1439 of the Civil Code which provides that:

"Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon

him on the like fulfillment of the other party. . . .'' The plaintiff did not aver or prove that he applied for or procured the Canadian patent. The only provisions of the contract relating to that patent are the recital that Capell ''also intends to apply for letters patent on said iron in Canada,'' and the statement in the description of the property granted, that it includes the right to manufacture and sell ''during the full term of said patent and for the full term of the Canadian letters patent when obtained.'' These provisions do not constitute an agreement to apply for or obtain a Canadian patent, but are, in the first place, a recital of the intention to apply therefor, and, in the second place, a prospective grant of an exclusive right under it if it is obtained. There was no obligation thereby imposed upon Capell the performance of which was either a condition precedent which he must first fulfill, or a condition concurrent which he must be able to fulfill, before the obligation to pay the advances would become due, within the meaning of the above provision of the Civil Code. We find no ground upon which this appeal can be supported.

The judgment is affirmed.

Angellotti, J., and Sloss, J., concurred.