MILDRED MILLER v. O. B. McCLINTOCK COMPANY.[1]

April 25, 1941.

No. 32,629.

[1]Reported in 297 N. W. 724.

*Chester W. Johnson,* for appellant.
*Erling Swenson,* for respondent.

PETERSON, JUSTICE.

Plaintiff as the executrix of the last will and testament of her father, William E. Hardacker, sues to recover $2,400 annual royalty for the years 1938 and 1939 claimed to be due under a patent license contract dated November 25, 1935, wherein he was licensor and defendant was licensee.

The licensor and one Hessel were the owners as tenants in common of patents on a sewer flooding control apparatus and an improvement thereof issued on October 21, 1930, and April 7, 1931.

By the terms of the contract the licensor granted to the licensee the exclusive license and privilege under his share and interest in the patents and improvements thereto to make and sell the device. The grant was for the term of the life of the patents and any improvements thereto. Paragraph eight of the contract provided that:

"This license agreement herein granted shall be and remain in full force and effect for the full life of the patents hereinbefore mentioned and for the life of any improvements of said patents hereinafter granted unless this agreement is sooner terminated by mutual consent or by the nonperformance of either party to the contract."

As royalty for the license the licensee agreed to pay during the life of the patents five per cent of the gross price of each device sold or installed "during the life" of the contract. Payments of royalties were to be made monthly on or before the 15th day of the month next after that in which they accrued. The licensee agreed to pay certain minimum royalties under a contract provision which reads as follows:

"Beginning January 1st, 1937, and continuing thereafter for the life of the patents or until this license and agreement is voided by mutual consent or nonperformance, the party of the second part agrees that if the Royalties at the rate of 5% on gross sales or installations made by the party of the second part do not amount to as much as a total of Twenty-four Hundred Dollars ($2,400.00) in one year, the difference between the amount of said Royalty and the sum of Twenty-four Hundred Dollars ($2,400.00) will be paid as an additional Royalty to the party of the first part."

Defendant agreed to use its best efforts and endeavors to promote and constantly increase the business done by it under the contract and to manufacture the device in sufficient quantity to supply the demand for it.

Paragraph 11 provides that if the licensee should fail for three successive months to pay the monthly royalties the licensor could by giving 60 days' notice by registered letter to defendant at its office in Minneapolis "of cancellation of this agreement, terminate this license agreement without the necessity of any judicial proceeding or decree" without prejudice to any royalties owing, accrued, due, or unpaid at the time of such termination.

Another paragraph provides that if on January 1, 1938, or any succeeding year during the life of the license, there should be due from the licensee to the licensor "a sum of money for Royalties, then this license agreement may be terminated by action the same as in paragraph 11, unless the Royalty is paid within three months."

By paragraph 14 the licensor gave the licensee "the right to prosecute any infringements" and agreed that he would "sign any papers necessary in such action or actions" and "give every assistance" to the licensee in such case "except financial." The licensee agreed to bear the expense of such suits.

The contract contained many other provisions which we think are not important here, such as those relating to keeping of records of its manufactures and installations, employment of the licensor by the licensee for one year, which has been performed, and certain others.

Subsequent to making the contract, defendant entered into a contract with Hessel for his interest in the patents. The licensee manufactured and sold the device from the time of making the contract until January 1, 1938, a period of over two years and one month.

Defendant claimed that there was a failure of consideration upon many grounds, only one of which deserves mention. April 30, 1929, the licensor and Hessel granted an exclusive license to the Little Giant Manufacturing Company, a Delaware corporation, to manufacture and sell the apparatus under which the licensee had an option to terminate the license. Little Giant manufactured the valve for about one year under the license. It went out of

business about 1931. In 1934 its corporate existence was suspended by the state of Delaware pursuant to law for nonpayment of taxes and so continued until the trial, which was in February, 1940, although Little Giant could have obtained reinstatement under the law of Delaware by following a certain procedure and paying the taxes which it owed. Neither Little Giant nor anyone interested in it claimed or asserted any rights under the license after 1930 against the licensor or Hessel or the licensee in this case. Hessel was one of the officers of Little Giant.

It was also claimed that the license contract here involved was void because it was made without the written consent of Hessel in violation of an agreement between the licensor and Hessel as co-owners of the patent that neither would grant a license without the written consent of the other.

Further, defendant claimed that it had terminated the license contract on January 1, 1938, by written notice on October 27, 1937, of its intention to cancel and not to perform the contract effective on the first mentioned date. It made numerous offers of proof as to conversations between the parties interested prior to the execution of the contract that they intended that either party should have the right to terminate it at will. The offers were excluded, but defendant was permitted to show all the circumstances surrounding the negotiations and the execution of the contract.

The court below held that defendant was obligated by the contract to pay the stipulated royalties; that its attempt to terminate the contract was ineffective; that there was no failure of consideration; that the license agreement involved here was valid without Hessel's consent; and that plaintiff was entitled to recover $4,800 royalties due for the years 1938 and 1939.

Here, on appeal from an order denying its motion in the alternative for amended findings of fact and conclusions of law or a new trial, defendant challenges the decision below with respect to each of the matters mentioned, and the rulings excluding evidence of prior conversations as to what the parties stated they intended by the terms of the contract.

■ Defendant contends that the contract provision for the payment of minimum royalty should be construed not as an obligation to pay at all events, but only as an option on its part to pay to keep the license in force. The terms of the contract are that the grant of the license was for the life of the patents and that defendant agreed to pay the royalties for the license during the life of the contract. Such language clearly bound the defendant to pay the stipulated royalties during the life of the patents.

In Lauth v. McKenna Steel Working Co. 160 Wis. 309, 151 N. W. 797, it was held that plaintiff, as licensor of certain patents on a furnace, was entitled to recover from defendant as licensee the stipulated annual royalty for the exclusive license to make and use the furnace during the term of the grant, which like that in the instant case was for the life of the contract, upon the grounds that the contract fixed the time during which the payments should continue and that the royalty was the consideration agreed to be paid for the license. The court said:

"So the agreement prescribes the duration of the grant and the annual sum per furnace to be paid during the period of the grant"; and, "the plaintiff [the licensor] is thereby [by the license granted] deprived of the use of his patents, and the defendant has the right to use the device covered by them or keep them off the market. It is the right which the defendant acquired, to use or not at its pleasure, for which it is paying, and not for the use of the particular device."

A provision in a patent licensing agreement for a minimum royalty is to protect the licensor by imposing a minimum liability on the licensee for the license granted, whether the provision is that the royalty shall equal at least a certain amount, or that it shall be paid on not less than a certain number of articles, regardless of whether or not the licensee operated under the license. American Delinting Co. v. Pomeraning (D. C.) 274 F. 212.

The terms of the contract control as to the period during which royalty payments shall be made. Where the term fixed by the

contract is the life of the patents, as here, royalty payments must be made during such term. Lauth v. McKenna Steel Working Co. and American Delinting Co. v. Pomeraning, *supra;* Neenan v. Otis Elev. Co. (C. C.) 180 F. 997, affirmed (2 Cir.) 194 F. 414; Preston v. Smith, 156 Ill. 359, 40 N. E. 949; Hamilton v. Park & McKay Co. 112 Mich. 138, 70 N. W. 436; Union Mfg. Co. v. Lounsbury, 42 Barb. (N. Y.) 125; Hackett v. Hackett Hatch Door Mfg. Co. 20 Jones & Spencer (52 N. Y. Super. Ct.) 263; Bassani Processes, Inc. v. Edward Stern & Co. Inc. 125 Pa. Sup. 537, 189 A. 539; Beecher v. Stein, 139 Pa. 570, 21 A. 79.

Cases involving licensing contracts under which the licensee was not bound to pay the minimum royalty at all events, but was required or permitted to pay to avoid a forfeiture or termination of the license or to extend it for a given period, holding that the licensee was not liable to pay royalty where he did not operate under the license, such as Standard Appliance Co. v. Standard Equipment Co. (6 Cir.) 296 F. 456; Wing v. Ansonia Clock Co. 102 N. Y. 531, 7 N. E. 621; and Ebert v. Loewenstein, 42 App. Div. 109, 58 N. Y. S. 889 (affirmed, 167 N. Y. 577, 60 N. E. 1110), cited by defendant, are not in point. Nor are cases in point which hold that the licensee was not liable where the contract provided that the licensee should be liable for the stipulated royalty for a period during which he operated under the license and the licensee did not operate under the license during the period for which royalty was claimed, such as Elliott v. Barrett Co. (D. C.) 25 F. (2d) 125.

The distinction between the cases holding the licensee liable where he agrees to pay royalty at all events and those where the payment is optional on the part of the licensee to avoid forfeiture or termination of his license or is the price of the privilege of operating under the license for a given period is, as was pointed out in the Standard Appliance Co. case, *supra,* that between duty and privilege, obligation and option to pay. The Loewenstein and Ansonia Clock Co. cases are distinguished upon that ground in

Cummings v. Standard Harrow Co. 55 Misc. 601, 105 N. Y. S. 646, and Capell v. Capell Sales Co. 165 Cal. 334, 132 P. 260.

The case of Riley Stoker Corp. v. Jeffrey Mfg. Co. 62 Ohio App. 199, 23 N. E. (2d) 519, involved a contract which, as construed by the court, provided that the licensee should be liable for royalties for a nonexclusive license in the event it operated thereunder and that if the accrued royalties did not amount to $300 annually the licensee would pay the difference. The court held that, inasmuch as the contract provided that the licensee should be liable, not at all events, but only if it operated under the license, there could be no difference to be paid where the licensee did not operate under the license. The case is not in point. Here the license was an exclusive one, and the defendant as licensee agreed to pay the royalty at all events and to operate under the license granted. We find no difficulty in determining that the difference between $2,400 and nothing is $2,400, the amount defendant agreed to pay under the contract. As an arithmetical proposition, the difference between a positive and a naught or a minus may be ascertained by mere computation. It was not necessary that there be some royalty accrued to subtract from the stipulated minimum to compute a difference. Furthermore, if it be conceded that there must be an accrued sum to subtract from the amount of the minimum royalty to compute a difference, defendant's failure to operate under the contract as it was bound to do prevented such a sum from coming into existence. According to defendant's argument, if it manufactured and sold only one device during the year, it would have been liable for the minimum royalty. Where it defaults completely, it argues that it is not liable at all. That seems ridiculous and absurd. A person may not escape liability under an agreement upon a condition by preventing the happening of the condition. Comptograph Co. v. Burroughs Adding Mach. Co. (C. C.) 175 F. 792, affirmed (7 Cir.) 183 F. 321, 37 L.R.A.(N.S.) 821. Hence defendant cannot escape liability for the minimum royalty by its failure to operate under the license.

160

■ Defendant claims that it had the right under paragraph eight of the contract, which provided that the contract should remain in full force and effect during the life of the patents "unless this agreement is sooner terminated by mutual consent or by the nonperformance of either party," to terminate the contract by giving notice in advance of its intended default. The argument is that the clause provides for an alternative manner of terminating the contract, *viz.*, mutual consent and nonperformance of either party.

A contract for the licensing of a patent is not revocable by the licensee without the consent or fault of the patentee. St. Paul Plow Works v. Starling, 140 U. S. 184, 11 S. Ct. 803, 35 L. ed. 404; Dall Motor Parts Co. v. Packard Motor Car Co. 124 Ohio St. 363, 178 N. E. 835. One of the parties to a contract may terminate it if it so provides. Schwab v. Baremore, 95 Minn. 295, 104 N. W. 10; 12 Am. Jur., Contracts, § 434, note 1. See Corbin, "The Effect of Options on Consideration," 34 Yale L. J. 571.

Courts are inclined to construe a contract so as not to allow a party to terminate it at will without cause. Clauses that a contract may be terminated or cancelled for breach or default are construed as being intended for the benefit of the party who is not guilty of breach or default, not the one who is. In Dana v. St. Paul Inv. Co. 42 Minn. 194, 44 N. W. 55, we said: "A party who has entered into an obligation to pay will not be permitted to set up his own voluntary default to defeat the same, unless such intention clearly and unequivocally appears." See John v. Timm, 153 Minn. 401, 190 N. W. 890. The rule is rigorously applied in patent licensing contract cases. Comptograph Co. v. Burroughs Adding Mach. Co. (C. C.) 175 F. 792, affirmed (7 Cir.) 183 F. 321, 37 L.R.A. (N.S.) 821, *supra*. The right of either party to terminate the contract at will does not clearly appear. On the contrary, the contract fairly construed indicates that the party not in default should have the right of termination for nonperformance by the other. Defendant's argument concedes that each party had the same right to terminate the contract for nonperformance. It nec-

essarily follows that the right of each measures the right of the other, except as otherwise explicitly stated in the contract. Of course the contract is to be construed as a whole. Other clauses show that neither party was to have the right to terminate at will. The contract provided that the licensor should have the right to cancel the contract for defendant's default in payment of royalties prior to January 1, 1938, without a judgment or decree by giving 60 days' notice thereof by registered letter and after January 1, 1938, by action unless the royalty was paid within three months. It is very plain from these provisions that the licensor had no right to terminate at will. In light of the rule that breach of covenant to pay royalties at the time stipulated is not ground for cancellation of a patent license, Rowland v. Biesecker (2 Cir.) 185 F. 515, and Foster Hose Supporter Co. v. Taylor (2 Cir.) 184 F. 71, these provisions must be construed as giving the licensor a right of termination which he would not otherwise have. Absent these provisions, he would have had no right to terminate the contract for defendant's default in royalty payments. It was not necessary to give the licensor a right to cancel the contract for cause if he had the right to terminate it at will. It necessarily follows that he had no right of termination at will. Furthermore, a construction authorizing termination at will renders meaningless and superfluous the provisions for termination by mutual consent as well as those by notice and action. Our conclusion is that neither party had the right to terminate the contract at will.

It seems that what the parties meant was that either party should have the right to terminate the contract for breach or nonperformance by the other, subject to the provisions mentioned relating to plaintiff's right of termination for nonpayment of royalties where the defendant was otherwise performing the contract. Under such construction, plaintiff would have the right to terminate the contract for defendant's total breach and for a partial breach for nonpayment of royalties limited as stated. Defendant would have the right to rescind for plaintiff's breach. It is to be remembered that plaintiff had by terms *in praesenti* granted a li-

162

cense to defendant. Performance on plaintiff's part was complete except for promised coöperation in infringement suits brought by defendant. On the other hand, the contract was executory on the part of defendant. Performance involved considerable expenditure of money in manufacturing and selling the device. Defendant desired to protect such investments and expenditures. As to the payment of royalties, the contract was wholly executory on the part of defendant. The construction which we have adopted seems to be in accord with the intention of the parties.

■ Failure of consideration justifying the licensee of a patent in refusing to pay the stipulated royalty simply means that he should not be compelled to pay where he did not receive that for which the payment was promised. Schutte & Koerting Co. v. Wheeler C. & E. Co. (D. C.) 295 F. 158. On the other hand, where the promisor received that for which he bargained, there is no failure of consideration. Restatement, Contracts, § 274, and Minn. Annotations. A patent licensee who manufactured and sold the patented article under an exclusive license has received the consideration for which he bargained and hence is not entitled to rescind or cancel the contract for failure of consideration. Stentor Elec. Mfg. Co. Inc. v. Klaxon Co. (3 Cir.) 115 F. (2d) 268. Here the licensee received the exclusive right to manufacture and sell the device for which it promised to pay the stipulated royalties. The outstanding contract held by Little Giant did not operate to evict or interfere with defendant in the enjoyment of its license rights. Nor could it. When the license contract here involved was executed, the Little Giant contract was six and one-half years old and had been abandoned for about five and one-half years. The corporate life of Little Giant was forfeited in 1934. That condition of affairs still continued at the time of trial in 1940. Absent a showing to the contrary, the continued abandonment of Little Giant's contract for something like ten years and the abandonment of Little Giant itself for some six years after its corporate existence was terminated compels the conclusion that the Little Giant license had been abandoned and was of no effect. A con-

tract may be terminated and discharged by mutual nonperformance clearly showing such an intention. Mathwig v. Ostrand, 132 Minn. 346, 157 N. W. 589; 6 Dunnell, Minn. Dig. (2 ed.) § 10043. The abandonment continued about four years in excess of the period allowed by the statute of limitations for its enforcement. On the showing, neither a resurrected Little Giant nor those interested in it had any enforceable rights under its license. There was no failure of consideration.

■ Only Hessel had the right to assert any rights under his contract with the licensor by which they agreed that neither would grant a license to the patents without the written consent of the other. Defendant has no right of complaint so long as Hessel did not object. But Hessel has in effect consented. He also gave defendant a license to operate under his share of the patent. Hence defendant had licenses from both Hardacker and Hessel. The separate licenses by them of their separate shares was the same in legal effect as a single license covering the whole of the patents. It is reasonably clear that all parties concerned intended that defendant should have such a license, and that is what it received.

■ The exclusion of the statements and conversations as to what the parties meant by the language of the contract was correct. Evidence of all the circumstances prior to and contemporaneous with the execution of the contract was admissible, but oral statements by the parties of what they intended the language to mean were not. Wilmot v. Minneapolis Auto. Trade Assn. 169 Minn. 140, 210 N. W. 861; Segerstrom v. Holland Piano Mfg. Co. 142 Minn. 104, 170 N. W. 930; City of Winona v. Thompson, 24 Minn. 199; Restatement, Contracts, § 230.

Affirmed.