(158 App. Div. 166.)

### FAIRCHILD et al. v. CITY & COUNTY CONTRACT CO.

(Supreme Court, Appellate Division, Second Department. July 25, 1913.)

RAILROADS (§ 64*)—PURCHASE OF LAND—CONTRACT—CONSTRUCTION.

 Defendant, having a contract to construct a railroad and stations for a railroad company, contracted to purchase land from plaintiffs for a station at a particular location. The contract provided that the price was a reduction from the true value of the land, and was granted in consideration of the benefit the construction of the railroad and the station would cause to accrue to plaintiffs' other land in the immediate vicinity. The railroad, the principal officers of which also were officers of defendant, had previously located the road through the property in question, but later changed the route so that it did not touch the property at all, and defendant refused to purchase. *Held*, that defendant's obligation to take the land was not excused by the change of location and that it was liable for the damages sustained by its breach.

 [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 144, 147–152; Dec. Dig. § 64.*]

Appeal from Trial Term, Westchester County.

Action by John F. Fairchild and others against the City & County Contract Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

Ralph Polk Buell, of New York City (George S. Graham, of New York City, on the brief), for appellant.

Arthur M. Johnson, of New York City, for respondents.

THOMAS, J. On a former appeal it was decided that the complaint stated a good cause of action for damages. 153 App. Div. 277, 138 N. Y. Supp. 133. The present question is whether the failure to build and maintain a station is excused by change of location of the railroad. The defendant was empowered and obligated by contract with the railroad company to outfit and to deliver the railroad, built on right of way acquired in the company's name, and equipped ready for operation. In furtherance of such contract, the defendant made the contract for the purchase of the land in question, which was appropriated by defendant towards the fulfillment of the contract with the company.

If the defendant made such appropriation so as to commit the company to it, the latter could not change its location and compel the defendant to relinquish this and furnish other right of way without making compensation for any damages that defendant would suffer thereby. The contract with Reynolds was made March 2, 1906 (139), and the deed was executed in the following May (43) and contained the following stipulation:

"It is further agreed that the price at which said property is sold by the party of the first part to the party of the second part, is a reduction from the true value of the property which reduction the party of the first part has consented to, in consideration of the benefit which the construction of the railroad and of the railroad station proposed to be constructed by the said

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

party of the second part will be to the remaining property of the party of the first part and in consideration for such reduction in the price of the property hereby conveyed, it is agreed by the party of the second part that it will, when it shall have constructed said railway as now laid out, construct, maintain and operate, or cause to be constructed, maintained and operated, a station on the line of said railway, which station shall be located upon lots numbers 81, 82, 83 and 84, as shown on said subdivision map, hereto annexed, and for such purpose shall, on the completion of said railway construction, exercise its option to purchase said lots 81, 82, 83 and 84 and said station shall be constructed and ready for use as such, on or before March 1, 1911."

It was not until February, 1909, that the route was changed so as to be entirely without the land purchased, and at that time the New York, New Haven & Hartford Railroad Company owned a controlling interest in the stock of the New York, Westchester & Boston Railway Company, and also in the stock of the defendant; and the defendant's president, treasurer, and secretary were the same persons who held similar positions in the railroad company, and the defendant's three directors were directors in the railway company, and "a certain large number of stockholders were joint stockholders in both companies." It is incredible that the railroad company disclaimed the right of way purchased by its authorized contractor, and changed its route without indemnifying and without the consent of the defendant, who had the sole right to build the railroad. The company had located its route through the Reynolds property before the time of the purchase, and the defendant conformed to its agreement for constructing the road in acquiring the property, and the company could not repudiate the act, and it is not presumed that it did so without defendant's consent. The evidence is not fully returned, but I assume from the presentation that nothing was omitted bearing on this question. But at the time of the abandonment of the old line there was not only no antagonism between the railroad company and defendant, but a practical unity of control, and, if the former changed the route against the will and interest of the defendant, the defendant should make it appear.

But even so, the defendant cannot escape responding. It had its contract with the railroad company and, fortified by it, agreed to cause the station to be maintained. It had or had not the authority to settle the location of the station. If it had such authority, it could obtain reparation for failure of the company to substantiate the agreement. If it had not such authority, it was assuming it and cannot plead its absence. There has been no destruction of the subject-matter of the contract by superior force, nor, so far as appears, against defendant's will. The defendant's very guaranty was that the station should be in a given place, and it fared better for it. It cannot now plead that it was not potential to put it there; it made its ability to do so the very basis for a reduced purchase price. It knew the law and the possibility of change of line and the power of the company to do it; it knew its relations to the company and could measure its power of influence or compulsion to keep the line where it was located and to have a station maintained, and so it agreed, in effect, that the railroad it had full and sole authority to build should be on a certain

routè, and that, with the entire power to establish stations, it would fix one on a designated location. Now it pleads that it was impotent to prevent a change of route, but it stipulated its potency and should not now be heard to deny it. Relying then on the former decision of this court that the complaint does state a cause of action—a conclusion I am not at liberty to reconsider—there is no legal excuse for defendant's failure.

The judgment should be affirmed, with costs. All concur.