THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD
. COMPANY, Appellant, *v.* HENRY E. BOWNS et al.,
Respondents.

58    573
165    254

Plaintiff contracted to deliver to defendants a certain quantity of coal. The
contract contained a clause, that " every effort will be made by the com-
pany for the fulfillment of its contracts, * * * but if at any time
the business of the company is so interrupted by * * * strikes
among miners, or other employes, * * * as materially to decrease
the quantity of coal, * * * the company will not hold itself liable
for or pay any damages sustained by reason of the non-delivery of the
coal now sold." In consequence of a reduction of wages, a strike of the
miners and other employes in plaintiff's employ occurred, interrupting
its business and preventing it from obtaining all the coal called for. In
an action to recover for the coal delivered under the contract, *held,*
that the clause was a limitation upon the absolute undertaking to sell
and deliver; that plaintiff was not prohibited thereby from conducting
its mining operations upon the same general principles it would have
been governed by, had the contract not been made, nor was it required to
resort to extraordinary or unusual means to prevent strikes, but, by
necessary implication, had the right, irrespective of its effect upon the
action of its operatives, so long as it was done in good faith, and solely
with a view to its general business, to adopt such rules and regulations
and pay such wages as were usual, reasonable and proper under the cir-
cumstances; and, it appearing that plaintiff acted in good faith and
upon just and reasonable business principles in reducing the wages, that
it was not liable to defendants for the damages resulting.

*The D., L. and W. R. Co.* v. *Bowns* (4 J. & S., 126) reversed.

(Argued October 2, 1874; decided November 10, 1874.)

APPEAL from order of the General Term of the Superior
Court of the city of New York, reversing a judgment in favor
of plaintiff entered upon the report of a referee. (Reported
below, 4 Jones & Spencer, 126.)

This action was brought to recover a balance alleged to be
due for a quantity of coal sold and delivered by plaintiff to
defendant. The answer set up as a counter-claim, in sub-
stance, that plaintiff contracted to sell and deliver a specified
quantity, only a portion of which it delivered, and claimed
damages for the non-delivery of the residue.

Defendants purchased the quantity of coal set forth in the
answer, November 30, 1870, at one of the plaintiff's regular
monthly auction sales, in the city of New York, to be deliv-

ered during the month of December. One of the conditions of sale was as follows: "Every effort will be made by the company for the fulfillment of its contracts for the delivery of coal; but if at any time the business of the company is so interrupted by storms, floods, breaks, accidents, combinations, turnouts, strikes among miners, or other employes, or by any other occurrence whatsoever, as to materially decrease the quantity of coal which the company would otherwise have been able to obtain and deliver at Elizabethport during the month in which the coal now sold is deliverable, the company will not hold itself liable for, or pay any damages sustained by reason of the non-delivery of the coal now sold, or of any portion thereof, although a portion of the coal that is received at Elizabethport during said month, may, in the usual course of the company's coal sales and business, be disposed of otherwise than in the fulfillment of the contracts made by this sale; nor will the company, in case the coal now sold is not delivered, undertake a *pro rata* distribution among the respective purchasers of what is delivered; but in all cases of non-delivery from any of the above causes, the money paid on coal will be promptly refunded." Only a portion of the coal was delivered.

The referee found, in substance, among other things, that about November 20, 1870, plaintiff decided upon a reduction of miners' wages, which, by its order, was announced to the miners November twenty-ninth. This was the proximate cause of a strike which occurred on or about the 5th day of December, 1870, among the miners and other employes of the plaintiff who combined together and wholly suspended work; said strike continued until the month of May, 1871; that the business of the plaintiff was thereby so interrupted as to materially decrease the quantity of coal which they would otherwise have been able to obtain and deliver, as, during the continuance of said combination and strike, the production of coal by the plaintiff was wholly suspended; that, in consequence, on or about December tenth, plaintiff notified defendants it was not able to deliver more coal under the contract.

As a conclusion of law, the referee found that, by reason of the strike, plaintiff was absolved and released from the obligation to deliver the residue, and from liability for the non-delivery.

*Jacob Vanatta* for the appellant. In ascertaining the intention of the parties to the contract in suit it was proper to look into the circumstances surrounding the transaction, the situation and prior relations of the parties and the subject-matter of the contract. (*Agawam Bk.* v. *Strever*, 18 N. Y., 502; *Mayor* v. *Ex. F. Ins. Co.*, 3 Keyes, 436; *Blossom* v. *Griffin*, 13 N. Y., 569; *French* v. *Carhart*, 1 id., 90; *Bancroft* v. *Winspear*, 44 Barb., 211; *Gray* v. *Clark*, 14 Vt., 583; *Field* v. *Woodmancy*, 10 Cush., 431.) It was a custom or usage with all coal producers to limit their liability for non-delivery as plaintiff did. (*Wadsworth* v. *Olcott*, 6 N. Y., 72; *Walls* v. *Bailey*, 49 id., 464; *Johnson* v. *De Peyster*, 50 id., 666; *Sewall* v. *Gibbs*, 1 Hall, 602; *Hinton* v. *Locke*, 5 Hill, 439.) Parties contracting in reference to carrying on a business are presumed to know how it is usually carried on, and to have reference to such known circumstances in their contracts. (*M. D. Foundry* v. *Hovey*, 21 Pick., 441, 442; *Livingston* v. *Tyler*, 14 Conn., 493; *Lovering* v. *B. M. Coal Co.*, 54 Penn., 291; *Bliven* v. *N. E. Screw Co.*, 23 How. [U. S.], 420.) The strike was not caused by any negligence of the plaintiff. (*Blythe* v. *B. Water-works*, 11 Exch., 784; *Smith* v. *L. and S. W. R. Co.*, L. R. [5 C. P.], 102; *Lamb* v. *C. and A. R. R. and T. Co.*, 46 N. Y., 276; *Bell* v. *Real Estate Co.*, 3 Ala., 77; *Fisk* v. *Townsend*, 7 Yerger, 146.) The law presumes that men act according to their own interest. (1 Phil. on Ev., 608; *Van Pelt* v. *McGraw*, 4 N. Y., 110; *Hain* v. *Wilson*, 9 B. & C., 643; 1 Greenl. on Ev., 18, § 27.) In stopping delivery plaintiff did not take advantage of any wrong of its own, but merely exercised a right reserved to it by the contract. (A. & A. on Corp., § 767; 3 Kent's Com. [10th ed.], 306; *State* v. *Miller*, 1 Vroom [N. J.], 369; *Crouch* v. *Parker*, 40 Barb., 94; *Walley* v.

*Radcliff,* 11 Wend., 22 ; *Russell* v. *Nicoll,* 3 id., 112 ; *Matthews* v. *Hobby,* 48 Barb., 171 ; *Harmony* v. *Bingham,* 12 N. Y., 99 ; *Oakley* v. *Morton,* 11 id., 25 ; *West* v. *Uncle Sam,* 1 McAll., 505 ; *Taylor* v. *Caldwell,* 3 B. & S., 826.) The clear meaning and purpose of the tenth condition of the articles of sale is to diminish and limit the plaintiff's general liability. (11 N. Y., 25 ; 12 id., 99 ; *Reed* v. *Randall,* 29 id., 358 ; *Sprague* v. *Blake,* 20 Wend., 64 ; *Hargous* v. *Stone,* 1 Seld., 84 ; *Beirne* v. *Dord,* id., 102 ; *Jones* v. *Bright,* 5 Bing., 532 ; *Shepherd* v. *Pybus,* 3 M. & G., 868 ; *Hamilton* v. *Ganyard,* 34 Barb., 206 ; 2 Pars. on Con., 27 ; Broome's Maxims, [marg. page] 649 ; *Tompkins* v. *Dudley,* 25 N. Y., 272.) It being manifest that the judgment was according to right and justice, and that the strike would have occurred if plaintiff had not made any alteration in wages, the court will not reverse the judgment or order a new trial. (*De Peyster* v. *Col. Ins. Co.,* 2 Caines, 85 ; *Fleming* v. *Gilbert,* 3 J. R., 528 ; *Leven* v. *Smith,* 1 Den., 573 ; *Ledyard* v. *Jones,* 7 N. Y., 550, 554.)

*F. C. Cantine* for the respondents. Validity and force must be given to every part of the contract so as, if possible, to make the obligation of the parties mutual. (*Barton* v. *McLean,* 5 Hill, 256 ; 2 Story on Con., §§ 635, 657, 658 ; 2 Pars. on Con., 16, 17.) If the first clause of the tenth article of sale is repugnant to or inconsistent with the remainder of the article, it must prevail over the other parts. (2 Pars. on Con., 26, and notes ; *Newdecker* v. *Kohlberg,* 3 Daly, 407.) If plaintiffs had intended to make the performance of the contract on their part dependent on the existence of any strike, they were bound to express that intention clearly. (*Riply* v. *Larmouth,* 56 Barb., 21 ; 2 Story on Con., § 662 ; 2 Pars. on Con., 19 ; *Alexander* v. *Green,* 7 Hill, 533 ; *Smith* v. *N. Y. C. R. R. Co.,* 29 Barb., 132 ; *Stedman* v. *W. Tr. Co.,* 48 id., 97 ; *Westcott* v. *Fargo,* 6 Lans., 319 ; *Wells* v. *Steam Nav. Co.,* 8 N. Y., 375 ; *Tompkins* v. *Dudley,* 25 id., 272 ; *Guillaume* v. *Ham., etc.,* 42 id., 212 ; *Steinweg* v. *Erie*

*R. Co.*, 43 id., 123; *Lamb* v. *C. and A. R. R. Co.*, 46 id., 271; *Keeney* v. *G. T. R. R. Co.*, 47 id., 525; *Edsall* v. *C. and A. R. R. Co.*, 50 id., 661; *N. Y. C. R. R. Co.* v. *Lockwood*, Alb. L. J., Dec. 13, 1873, p. 370.) Defendants were excused from making a demand for the coal and tendering payment therefor by plaintiff's refusal to deliver any coal, and by their circular notice of December 10, 1870. (*Clark* v. *Crandall*, 3 Barb., 612; *Skinner* v. *Tinker*, 34 id., 334; *Crist* v. *Armour*, id., 378; *Anderson* v. *Sherwood*, 56 id., 66; *Bunge* v. *Koop*, 5 Robt., 2; *Moses* v. *Banker*, 2 Swe., 267; affirmed, 48 N. Y., 225; *Mount* v. *Lyon*, 49 id., 552; *Wheeler* v. *Garcia*, 40 id., 584; *Burtis* v. *Thompson*, 42 id., 246; *Sears* v. *Conover*, 3 Keyes, 113.)

Allen, J. The Superior Court of New York, in reversing the judgment of the referee, gave effect to the clause in the conditions of sale, making a part of the agreement between the parties, that "every effort will be made by the company (the plaintiffs) for the fulfillment of its contracts for the delivery of coal," unauthorized by any just or reasonable interpretation of the contract. They disregarded not only the qualification of the clause immediately following it, and making a part of the same paragraph, but also the evident purpose and intent of the clause itself, which, without limitation or qualification, necessarily operated to limit the liability, and qualify the obligations of the plaintiff. The plaintiff might have undertaken absolutely for the delivery of the coal sold to the defendants and in such form as to be answerable, notwithstanding a performance had been prevented by any cause short of the act of God, or the public enemies. Perhaps a mere agreement to sell and deliver a specified quantity of coal by a given day, without limitation or qualification, would have held the corporation to its undertaking, notwithstanding the interruption of their mining operations, and a consequent inability to perform by any of the causes mentioned in the contract. (*Harmony* v. *Bingham*, 12 N. Y., 99; *Oakley* v. *Morton*, 11 id., 25.) But this rule only applies

when the contract is positive and absolute, and not subject to any condition express or implied. (*Taylor* v. *Caldwell*, 3 Best & Smith, 826.) The insertion of an agreement by the obligor in a contract following the principal undertaking, or in any way connected with and making a part of it, that he will "make every effort" to perform, necessarily, by implication, limits the obligation to the performance of such acts as upon a just interpretation may be included within the terms used. It would be the duty of the court to give the clause some effect, as the parties will not be intended to have deliberately inserted a condition or covenant of any kind without some purpose, and courts will be diligent to ascertain the purpose and give effect to it. The clause under consideration added nothing to the principal undertaking, which went further and was absolute to sell and deliver, and it follows that it must have been used to limit the undertaking so as to make it an agreement to deliver, if, by "any effort" of the seller, the same could be done. Had the conditions gone no further, and this been the limit to the qualification of the express obligations of the plaintiff to deliver the coal, the question would have been, whether "every effort for the fulfillment of the contract" compelled a resort, if occasion should require, to all means and measures possible, or within the reach of human effort, and that nothing but an absolute impossibility of performance would excuse the obligor; or whether it merely called for such efforts, in good faith, as were proper and reasonable in the conduct and management of the business in respect to which the contract was made, having respect to the usual and ordinary methods of conducting coal-mining operations, and the incidents and contingencies, as well as the general character and results of the business; such circumstances as may well be presumed to have been in the minds of the parties at the time of contracting. The more reasonable interpretation of the contract, and that most in harmony with the intent of the parties, and best calculated to promote justice between them, would only hold the plaintiff to the use of all reasonable and practical means to procure and

deliver the coal, according to the well known usage and practice of those engaged in similar business, or such as a jury would say, would be reasonable and proper under the circumstances: such as the defendants might be presumed to have expected from the plaintiff, at the time and under the circumstances in which the contract was made. (*Livingston* v. *Tyler*, 14 Conn., 494; *Mill Dam Foundery* v. *Hovey*, 21 Pick., 417.) Contracts are not to be construed literally when expressed in general terms, when it is evident that, so construed, they would not conform to the intent of the parties. In passing upon stipulations in contracts, qualifications and exceptions are frequently implied, and are necessary to give effect to the intent of parties, as such intent can be collected from the whole contract, examined in view of the circumstances under which it was made, and the purposes to be accomplished, and the business to which it relates.

Without dwelling further upon the isolated undertaking of the plaintiff to make every effort to fulfill the contract, we pass to the consideration of the express qualifications and limitations of that stipulation. The parties expressly stipulate that if at any time the business of the company is so interrupted by storms, floods, breaks, accidents, combinations, turnouts, strikes among miners or other employes, or by any other occurrence whatever as to materially decrease the quantity of coal which the company would otherwise have been able to obtain and deliver during the month in which the coal sold was deliverable, the company should not be liable for or pay any damages. A strike of the miners and other employes of the plaintiff occurred very soon after making the contract and continued many months, entirely interrupting the business of the company, and disabling and preventing it from obtaining the coal called for by this and other pending contracts. The strike, in the language of the referee, was immediately preceded and proximately caused by a reduction of the wages of the employes, and the contention of the defendants is, that as the strike resulted from the voluntary act of the plaintiffs, and would not have occurred but for that

act, the plaintiff cannot claim or have the benefit of the exemption from liability for that cause. The claim is, that the corporation expressly engaged to make every effort to fulfill the contract, and that this was an inhibition against doing any act which might induce a strike, and that the case is within the maxim, that no one shall take advantage of his own wrong, and this view was adopted by the court below. The maxim referred to is well established and fully recognized in courts of law and equity, and its reasonableness cannot be questioned. As one of its results, if a party is disabled by his own default from performing his contract, it is not competent for him to allege the circumstances by which he was prevented as an excuse for the omission. (*Touteng* v. *Hubbard*, 3 B. & P., 291.) But parties may agree in advance under what circumstances and upon what contingency the contract shall terminate, or either party be absolved from its obligations, and if the circumstances occur, or the contingency happen even by the voluntary act of the party claiming the benefit of the stipulation, it will be available to him in the absence of any fraud or *mala fides*. (*Beswick* v. *Swindells*, 3 A. & E., 868; *Ex parte Miller*, 2 Hill, 418; *Lovatt* v. *Hamilton*, 5 M. & W., 639.) There can be no doubt that if a strike had been brought about by the act of the plaintiff with a view to relieve itself from the obligations of the contract, and in fraud of the rights of the defendants, the circumstance would not have availed as an excuse for a failure to perform. The case would have been within the maxim, that no man shall take advantage of his own wrong, and the plaintiff would have been held to have become disqualified for the performance of the contract by its own unlawful or wrongful act. But the plaintiff did not by entering into the engagement with the defendants, subject to the limitations and restricted terms of the contract, surrender the right to conduct and manage its affairs and especially its mining and coal producing operations, upon the same general principles by which it would be governed had the contract not been made. It was still at liberty, irrespect-

ive of its effect upon the action of the operatives in its
employ, to adopt and abide by such prudential rules and reg-
ulations in the conduct of its business as had been and were
usual, and such as were reasonable and proper in themselves,
and as were adopted by others carrying on a like business.
So long as such measures only were adopted, in good faith,
solely with a view to the general business of the plaintiff
and the reasonable necessities of the business, the defendants
had no legal cause of complaint, although a strike ensued
and they lost the benefits of their contract. It is a perver-
sion of language to transfer the stipulation to make every effort
to fulfill the contract to the clause referring to strikes, so as
to make the plaintiff undertake to make every effort to pre-
vent or terminate strikes, which would but be another form
of agreeing to submit to every exaction and requirement of
their operatives whether reasonable or unmeasurable. Under
such an interpretation the contract itself would be a bid for
combinations of the workmen, and plaintiff would be wholly
at the mercy of its employes. By necessary implication,
the plaintiff reserved, and had the right to carry on its min-
ing operations, in the ordinary and usual method, by such
means, under such regulations, and paying such wages to
workmen, as were under the circumstances usual, reasonable,
and just, having respect, not alone to the contract with the
defendants, but to the general character, results and necessi-
ties, of that branch of business. The agreement was made
with respect to the business of the plaintiff as a mining cor-
poration, producing coal for sale, and the nature and inci-
dents of the business may be supposed to have been well
understood by both parties. The contract must therefore be
construed and have effect with reference to the manner in
which such business is usually conducted, and the known con-
tingencies attendant upon operations of the character. Espe-
cially must this be so in reading and interpreting special and
peculiar clauses not usual in ordinary contracts for the sale
and delivery of merchandise. This doctrine as to the inter-
pretation of written agreements is elementary, and is born of

the familiar principle of daily application in courts of justice, that all contracts must be so interpreted as to carry out the intent of the contracting parties.

Strikes of laborers have not been unfrequent, and as well their cause as their consequences and effects upon business arrangements were well understood by the parties to this contract, and provision was intended to be made against the results, but not against their occurrence; that is, their object was to protect the plaintiff from liability for damages to the defendants, to which it might otherwise be liable, in addition to the losses, which it would necessarily sustain from a strike of its laborers, and a suspension of its business, but not to require from the plaintiff a resort to extraordinary or unusual means to prevent them. A strike is a combination among laborers, those employed by others, to compel an increase of wages, a change in the hours of labor, some change in the mode and manner of conducting the business of the principal, or to enforce some particular policy in the character or number of the men employed, or the like. They can always be prevented or arrested, whatever be their origin, by a yielding on the part of the employer to the demand of the combination, and if such was the duty of the plaintiff, under the stipulation to make every effort that the contract with the defendants might be performed, the clause providing for an immunity from the consequences of a strike was nugatory and had no meaning. There could be no strike for which the plaintiff would not be responsible, in a way to deprive it of the benefit of the exemption from liability.

The particular stipulation under consideration, as well as every other part of the contract, must have practical and reasonable construction, and under it the plaintiff was bound to pursue a prudent and reasonable course in the conduct of its operations, with a view to a supply of coal, but was not compelled to yield to unreasonable demands of its employes, or to pay wages not usual in that branch of business, or unreasonable in amount and not warranted by the business itself. In other words, it was no wrong to the defendants, or

wrongful act causing the strike, that the plaintiff, in the conduct of its mining operations, was governed by the same prudential considerations which governed others in the like business, and which were reasonable and necessary under the circumstances. The plaintiff acted in good faith in fixing the wages of its employes, and upon just and reasonable business principles, and is in no respect liable to the defendants for the result.

The referee was entirely right in his conclusions, and, for the reasons assigned by him, the order of the Superior Court must be reversed, and judgment on his report be affirmed.

All concur.

Order reversed, and judgment accordingly.