PEOPLE ex rel. FISHER v. BOARD OF SUP'RS OF DELAWARE COUNTY.

(Supreme Court, Appellate Division, Third Department. October 24, 1905.)

1. DISTRICT AND PROSECUTING ATTORNEYS—COMPENSATION.

Where a district attorney agreed for a certain sum to act as attorney in all civil actions pending at the commencement of his term or thereafter brought by or against the county or board of supervisors, he was not entitled to extra compensation for services rendered during that term in suits commenced during the preceding term for the recovery of certain taxes paid the state, but belonging to the county.

2. SAME.

Where a district attorney agreed for a certain sum to act as attorney in all civil actions pending at the commencement of his term or thereafter brought against the county or board of supervisors, he was entitled to extra compensation for services for the county in a suit by it against the state for the recovery of taxes paid the state, but belonging to the county, notwithstanding the fact that his predecessor had performed similar services in suits by and against the county for the same salary.

3. COUNTIES—BOARD OF SUPERVISORS—DELEGATION OF AUTHORITY.

Where a board of supervisors empowered a committee to ascertain what sums were due from the state to the county and towns therein, and to institute proceedings necessary to recover them, the committee had power to employ the district attorney to prosecute the claim against the state.

Certiorari by the people, on the relation of George A. Fisher, to the board of supervisors of Delaware county, to review the determination of the board as to relator's claim for services for the county. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Wagner & Fisher, for relator.
Alexander Neish, for respondent.

HOUGHTON, J. The relator was elected district attorney of the county of Delaware in the fall of 1898, and his term of three years began on the 1st of the following January. The board of supervisors of Delaware county for many years had fixed the salary of relator's predecessors in office at $1,000, on the stipulation that, in addition to the strict duties of district attorney, the incumbent of the office should act as counsel for the board of supervisors during its sessions. In 1892 Mr. White had been elected to that office, and by stipulation with him the salary was fixed at $1,300, on condition that, in addition to his duties as district attorney and counsel for the board of supervisors at its sessions, he should act as attorney for the board in all civil actions and special proceedings then pending or thereafter brought by or against the board of supervisors or the county treasurer. This arrangement was made in view of the fact that large sums had been paid by the county to

attorneys as counsel for the board of supervisors and the county treasurer in proceedings brought against them, and it was thought that a large saving to the county could be made in this way. Mr. White held the office for two terms under this arrangement. At a meeting of the board between the election of relator and his taking office, a conference by a committee of the board was had with him, and, as was said, "in view of the fact that there did not appear to be as much civil business against the county in sight as formerly, and that the superintendent of the poor had been employing counsel at considerable expense," relator agreed to act as counsel to the superintendent of the poor, in addition to the board of supervisors and the county treasurer, and the committee on salaries made a recommendation in the following form:

"We therefore recommend that the salary of the district attorney-elect be fixed at $1,300 per annum (together with such expenses as are allowed by law and as heretofore allowed), being $1,000 for his services as district attorney proper and as counsel for the board of supervisors during their sessions, and $300 for acting as attorney in all civil actions and proceedings now pending or hereafter during his term brought against the board of supervisors or the county treasurer, and as counsel for the superintendent of the poor of the county. The said $1,300 to be his full compensation for all of the above-mentioned services (aside from expenses), and to be paid to him quarterly by the county treasurer of the county."

This recommendation was duly adopted by the board. On the 17th of April, 1899, the Legislature enacted chapter 336, p. 725, of the Laws of that year, conferring jurisdiction upon the Court of Claims to hear, audit, and determine all alleged claims of the several counties containing towns, villages, or cities bonded to aid in the construction of any railroad passing through them, on account of the payment to the state of the state taxes collected from such railroads within such localities. The county of Delaware contained such towns, and in the following November the board of supervisors by resolution appointed a committee of three to examine and ascertain what sums, if any, the county of Delaware and the several towns therein were entitled to under such act, and were empowered to institute such proceedings before the Court of Claims as might be necessary to recover such sum. This committee conferred with the relator, and such proceedings were brought by him in behalf of the county as resulted in a judgment in its favor against the state for $35,414.75, which was entered on the 27th day of December, 1904. The relator was re-elected district attorney in the fall of 1901, and prior to the beginning of his term on the 1st of January following the board of supervisors fixed his salary at $1,000 for his services as district attorney proper and as counsel for the board of supervisors during its sessions, and $300 for acting as attorney in all civil actions and proceedings then pending or thereafter brought by or against the county of Delaware, the board of supervisors, or the county treasurer during his term of office, stipulating that said amount of $1,300 be in full for all such specified services. The record discloses that most of the work with respect to the claim of the county against the state was done during relator's first term, there only remaining the entry of judgment and the details connected therewith to be performed during his second term of office. The acting as counsel during his second term to the

superintendent of the poor of the county was omitted.  The expenses incurred by the relator had been annually adjusted and paid, and as the matter was about to be closed by the entry of judgment relator presented to the board of supervisors a bill for $1,770.74, being 5 per cent. upon the amount recovered, which was wholly rejected, upon the ground that nothing was due him for services, because the services performed by him in relation to the claim were included in those which he had agreed to perform in consideration of the addition of $300 to his salary annually.  It is to review the correctness of this interpretation that this proceeding is brought.

With respect to the services performed in relation to the claim against the state for back taxes during relator's second term of office, we think the board was correct.  The language adopted by the board in fixing relator's salary for the term beginning January 1, 1902, was quite specific, and quite different from that used by it at the session of 1898.  The language is:

"$300 for acting as attorney in all civil actions and proceedings now pending or hereafter brought by or against the county of Delaware, the board of supervisors, or the county treasurer."

The county of Delaware is specifically mentioned, and actions and proceedings then pending by, as well as against, are included.  The acceptance by the relator of the $300 annually debarred him from making any claim against the county for services performed in its behalf in proceedings instituted by it or against it; and it must be said that the relator had no claim for any services performed by him after January 1, 1902, with respect to collecting the $35,000 back taxes from the state, as well as for any other services performed for the county or any of its specified officers.

With regard, however, to the services performed by him in collecting the back taxes during his first term of office we think the situation is different.  It was assumed that for the $1,000 he would act as counsel to the board of supervisors during its sessions as well as perform the duties strictly pertaining to the office of district attorney.  The $300 added was said to be for acting as attorney in all civil actions and proceedings now pending or hereafter during his term brought against the board of supervisors or the county treasurer and acting as counsel for the superintendent of the poor of the county.  There had been paid out, as was said by the committee in its report recommending this arrangement, by the superintendent of the poor, from $200 to $300 annually in attorney's fees.  The relator assented to adding the superintendent of the poor to his list of county officers for whom he should act as counsel and attorney.  Inducement for this was that the county appeared to be at that time quite free from litigation brought against it.  There does not appear to have been any litigation in its favor which relator's predecessor had instituted or was carrying on.  Neither the relator nor the board of supervisors knew, or apparently had any reason to believe, that the county would be given an opportunity to recover the large sum which it had erroneously paid to the state in taxes.  It was not until after whatever bargain the relator had made with the county that the Legislature passed the act which permitted the county

to file and prosecute its claim therefor. The proper presentation of such a claim necessarily involved considerable work. In order to hold that the services of the relator were included in his agreement, a proceeding not in the contemplation of either party and of considerable magnitude must be read into his contract. Reading the contract strictly, services for the county of Delaware were not included in it at all, except so far as the county was interested through its board of supervisors, treasurer, and superintendent of the poor. The word "against" only is used with respect to the board and the treasurer. As to the superintendent of the poor he was to act as his counsel, which would undoubtedly include necessary proceedings in his behalf, as well as those brought against him.

In Delaware, L. & W. R. Co. v. Bowns et al., 58 N. Y. 579, Allen J., says:

"In passing upon stipulations in contracts, qualifications and exceptions are frequently implied, and are necessary to give effect to the intent of the parties, as such intent can be collected from the whole contract, examined in view of the circumstances under which it was made, and the purposes to be accomplished, and the business to which it relates."

The respondent insists that, because the preamble in the report of the committee on salaries for the season of 1898 shows that Mr. White had acted as counsel in proceedings both by and against the board of supervisors and the county treasurer, that fact throws light on what was meant by the recommendation of the committee in adding $300 to relator's salary, and demonstrates the correctness of the respondent's interpretation of the agreement, and justifies the action of the board in wholly rejecting relator's claim. In this we do not concur. Nor do we concur in the further contention that the committee appointed by the board of supervisors to investigate and prosecute the claim against the state for back taxes had no power to employ the relator. They were directed to institute such proceedings before the Court of Claims as might be necessary. The services of an attorney were quite necessary for this purpose, and the county has had the benefit of relator's services, and audited and paid the expenses which he incurred in the presentation and prosecution of the claim. It follows that the determination of the board of supervisors in wholly rejecting relator's bill and refusing to audit his claim for services performed during his first term of office was erroneous. He was entitled to have his claim for services performed during that period passed upon and audited.

The determination of the board of supervisors with respect to the claim of relator for services performed during his first term of office and to January 1, 1902, is reversed, and the matter remitted to the board of supervisors of Delaware county for audit, with $50 costs and disbursements to relator. All concur.