Panzieri-Hogan Co., Inc., Respondent, v. Harry H. Bender, Appellant.

Third Department, July 6, 1922.

Contracts — damages — action by contractor for balance due under building contract — counterclaim alleging special damages — defendant should have been allowed to show loss of rent because of delay resulting from deductions allowed tenant pursuant to lease although contractor was ignorant of provisions of lease — contract provided for damages for delay and that strikes would excuse delay — reply excusing delay because of strikes — issues should have been submitted to jury.

In an action by a contractor to recover a balance due under a building contract which provided that, in case the owner of the building should sustain " any loss by way of damages of any kind " by reason of the failure of the contractor to fulfill any part of the contract, such damage should be deducted from the last

payment provided therein, loss of rent from a tenant of the building, resulting from the failure of the contractor to complete the building in the agreed time, said loss being a deduction made pursuant to the terms of the lease with such tenant, was a proper element of damage to be shown by the defendant owner under a counterclaim alleging special damages, although the contractor had no knowledge of the provisions of said lease at the time of making the contract, and the direction of a verdict for the plaintiff was error. Moreover, another issue raised by the plaintiff in its reply to the defendant's counterclaim, wherein it disclaimed liability for its default under a clause in the contract providing that strikes should excuse the plaintiff for failure to complete the contract within the prescribed time, should have been submitted to the jury.

APPEAL by the defendant, Harry H. Bender, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 27th day of March, 1922, upon the verdict of a jury rendered by direction of the court.

*Visscher, Whalen, Loucks & Murphy* [*Robert E. Whalen* of counsel], for the appellant.

*Thomas F. McDermott,* for the respondent.

KILEY, J.:

Both parties agree to the facts involved in this action. On June 29, 1920, the defendant owned premises situate on the east side of North Pearl street in the city of Albany known as Nos. 9 and 11 North Pearl street. It was a four-story building. Adjacent and in the rear thereof, on the west side of James street, he owned another building and premises known as No. 6 James street. On the date aforesaid defendant rented both properties to J. & T. Cousins for a term of ten years commencing May 1, 1921, at an annual rental of $23,000 payable in equal monthly installments of $1,916.67. In said lease and as a part thereof the defendant agreed to erect upon the premises No. 6 James street a new building, the second floor of which should be on the same level and connected with the ground floor of the building on Nos. 9 and 11 North Pearl street. The ground on James street was much lower than the ground on North Pearl street. It was also agreed in said lease that the work on the new building and connection should be completed on May 1, 1921, the date when the term under the Cousins lease commenced to run, and that in default of such completion the rent reserved in the lease should be reduced one-half after that date until such building, connection, etc., should be completed. On September 16, 1920, the defendant entered into a contract with the plaintiff corporation to do that work. The work was to commence October 1, 1920, and to be finished January 1, 1921. The agreed price was $27,725, except it was further provided in said contract that should the occupancy of a drug company in the North Pearl street building

interfere with the connecting up of said buildings on North Pearl and James streets, the contractor should receive an additional sum of $1,160, and with the further provision that the work of connecting up the said buildings should not take over twenty-one working days after notice from defendant to proceed with the work of connecting said buildings. The said contract between the plaintiff and defendant contained two other important provisions, viz.: " Excepting, however, that if the said party of the second part [plaintiff here] shall be delayed in performing said work or furnishing said material by reason of strike or strikes on the part of workmen or employees, or on the part of the workmen or employees of any subcontractor, then the time for the completion of said work shall be extended for a period equal to the duration of any such strike or strikes." And further: " *Eighth.* In case the party of the first part shall sustain any loss by way of damages of any kind by reason of the failure of the party of the second part to fulfill any of the agreements herein contained on its part, such loss or damage shall be deducted from the last payment made to the party of the second part as provided for herein." Early in January, 1921, the job was complete except the work of connecting up the buildings and I conclude from the evidence that such failure was due to the drug company in said building. The next step in the sequence is that on January 22, 1921, the defendant by agreement in writing agreed to sell the premises in question to the Patroon Corporation by deed dated June 30, 1921, subject to the lease with Cousins, and further agreed that plaintiff's work under its contract should be completed before the Patroon Corporation took title June 30, 1921. To that end the defendant gave the notice provided for in his contract with the plaintiff on April 26, 1921, which fixed the time for completion May 23, 1921, or twenty-one working days after the notice was given. The work was not completed until July 26, 1921. Under the Cousins lease the defendant lost himself, in part, and was obliged to pay to the Patroon Corporation, in part, one-half of the rent reserved in the lease. Concededly, there was unpaid on the plaintiff's contract when the work was completed $2,011.17. Defendant sought to recoup his damages as aforesaid by withholding this balance under paragraph 8, above quoted, from plaintiffs' balance according to the provisions of its contract with the defendant. This action is for that balance. Defendant's answer admits the contract with plaintiff and sets it up as part of his answer. He gives the time after May twenty-third to the day of the completion of the contract during which time one-half of the rent reserved in the Cousins lease was lost to him, as fixing his measure of damage. He was permitted to prove the facts as above stated,

but the evidence was stricken out as inadmissible because it was not shown that plaintiff had any notice of the provisions of the Cousins lease. While defendant in his counterclaim alleged upon information and belief that plaintiff had such notice, such knowledge was not proved. Defendant's counterclaim alleged special damage; he was permitted to give evidence which would be competent under a general allegation of damage, defendant urging that his counterclaim contained such general allegation; the court also struck this evidence from the record. The court directed a verdict for the plaintiff on the ground: " That in order to recover such losses under such leases it is necessary to establish that those leases and the losses sustained thereunder were known to the parties at the time of the making of the contract, and were in contemplation as a measure of damage for a breach of the contract." Proper exceptions were taken to the several rulings of the court and to the direction of the verdict. I think paragraph 8 of the contract between plaintiff and defendant defines the liability which plaintiff was willing to assume in order to get the work. If the defendant " shall sustain *any* loss by way of damages *of any kind* by reason," etc. The parties made the law of this contract by their agreement and *Lowry* v. *Inman* (46 N. Y. 119) in stating that rule is applicable thereto. In *Globe Refining Co.* v. *Landa Cotton Oil Co.* (190 U. S. 540) is stated with clearness the usual attitude of parties in making such contracts, and that too, in making the ordinary contract. In this contract it will be observed that the only limit of plaintiff's liability is, that it shall be the cause, by default, of any damage suffered. The damage contemplated was any damage. As to what might have been foreseen by plaintiff we have the fact that its place of business was Albany, N. Y., where its contract was to be performed. That the delay in the first instance, from January to April, was because of tenant occupancy of said premises. No other damages, so far as the record shows, could have been contemplated, even if words of restriction had been used, and as said in 190 United States (*supra*): " The extent of liability in such cases is likely to be within his contemplation, and whether it is or not, should be worked out on terms which it fairly may be presumed he would have assented to if they had been presented to his mind." In *Murdock* v. *Jones* (3 App. Div. 221) it was held that although the subcontractor did not have notice of the time limit in his principal's contract, he was liable for default in not reasonably expediting the work he was to do, and did not do, to the damage of the principal contractor. I am of the opinion that defendant had a right to set up his counterclaim by the allegation of special damage

7

as he did do; that he had a right to have it considered. (*Read* v. *Fox*, 119 App. Div. 366; *Wagner* v. *Corkhill*, 40 Barb. 175.) As above said, no other damages could have been contemplated, and they are such as might naturally be expected to follow the default; their nature is definite, and their source is not in doubt. (*Fairchild* v. *City & County Contract Co.*, 153 App. Div. 277; *Leonard* v. *New York, etc., Tel. Co.*, 41 N. Y. 544; *Meyer* v. *Haven*, 70 App. Div. 529, citing 41 N. Y. *supra*.) Plaintiff in its reply to defendant's answer setting up his counterclaim, disclaims liability for its default, under that clause in its contract which makes strikes an excuse for extended time necessary to complete the contract according to its terms. The issues presented should have been submitted to the jury.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment reversed and new trial granted, with costs to the appellant to abide the event.