GEORGE KELLOGG and LAUREN KELLOGG, Appellants, *v.* THE BOUTWELL MILLING AND GRAIN COMPANY, Respondent.

Third Department, November 15, 1922.

Sales — action to recover purchase price of oil meal — defense based on breach of contract requiring delivery in September — contract provided that differences with workmen would excuse delay — plaintiffs' employees struck in August — plaintiffs, by filling another order subsequently taken, did not deliberately make themselves powerless to fill defendant's order — failure to deliver caused by strike — delivery October fifth made within reasonable time.

In an action to recover the purchase price of a carload of oil meal it appeared that the meal was to be delivered in September and that delivery was not made until October fifth. The defense interposed was breach of contract on the part of the plaintiffs in failing to deliver within the time agreed. The contract provided that in case differences arose between the plaintiffs and their employees, delay in delivery would be excused. It appeared that in August, shortly after the contract was made, plaintiffs' employees struck and that its mill opened two days thereafter at fifty per cent of its capacity; that the plaintiffs accepted and filled in September an order for one carload of meal taken after defendant's order was accepted, and that the plaintiffs were behind in filling their orders on August first and also on September thirtieth.

*Held*, that the plaintiffs did not deliberately make it impossible for them to deliver the carload of meal to the defendant in September by accepting and filling the subsequent order, but that the failure of the defendant to deliver the meal as

contracted was due to the decreased production which was caused by the differences between the plaintiffs and their employees.

Furthermore, delivery made on October fifth on the contract calling for delivery in September was made within a reasonable time after the expiration of the time of delivery stipulated in the contract.

APPEAL by the plaintiffs, George Kellogg and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Montgomery on the 16th day of May, 1922, upon the decision of the court dismissing the complaint.

*Conover, Myers & Searle* [*John W. Searle* of counsel], for the appellants.

*Frederick E. Draper*, for the respondent.

HASBROUCK, J.:

The judgment in favor of the defendant cannot stand unless the plaintiffs, unreasonably or willfully, put it out of their power to comply with the terms of the contract and deliver the third car of " old process linseed oil meal " in September, 1920.

The contracts between the plaintiffs and the defendant were in writing. The first one of August seventh provided for the delivery of two cars or sixty tons in September. The second contract of August ninth provided for the delivery of thirty tons September fifteenth.

The parties made a third contract on August tenth, which provided for the delivery of ninety tons in the month of October. All of these contracts were in the same form and contained among other provisions the following: " Fires, differences with workmen, accidents to mill or power running the same, or any cause unavoidable or beyond control of seller, * * * shall excuse any delay in filling or shipping orders."

On the twelfth of August the plaintiffs made an agreement with Thompson & Co. of Pittsburgh to ship them thirty tons of the same meal in September. On the fourteenth of August, after all of these contracts for the sale and delivery of meal had been made, there arose differences between the plaintiffs and their workmen. The employees demanded a fifty per cent increase in wages which the plaintiffs refused to pay and for that reason there was a walkout and a strike causing a shut-down of the plaintiffs' plant which did not resume operations until August sixteenth and then at only fifty per cent of its capacity.

The condition of their business was such that on the 1st of August, 1920, plaintiffs had 715 tons of undelivered orders and at the close of their business on September thirtieth, they claimed they

had 661 tons of undelivered orders. After the making of the contracts with the defendant, plaintiffs accepted only two contracts calling for the delivery of meal in September. One of those was the Thompson & Co. agreement above described.

The plaintiffs in undertaking to perform their contracts with the defendant delivered one order, the thirty tons, to them on September ninth. On September fourteenth the plaintiffs delivered thirty tons to Thompson & Co. of Pittsburgh, on its contract of August twelfth. On September seventeenth plaintiffs delivered a car to the defendant in performance of the contract of August ninth. The plaintiffs did not deliver the third car called for by the contract of August seventh until October fifth. The defendant claims that time was of the essence of the contract of August seventh and that the failure to deliver all of the tonnage in September was a breach of that contract. The plaintiffs claim that under the terms of their contract they were to be excused from delay in delivery because of " differences with workmen."

The defendant maintains that the plaintiffs are not excused from performance by differences with workmen because they delivered to Thompson & Co. thirty tons in September which were ordered after the defendant had given its order; that it was the duty of the plaintiffs to fill the orders according to the priority of the time of the order.

This claim is founded on the rule of law that no man ought to be permitted to take advantage of his own wrong.

To solve the contention, therefore, between the plaintiffs and the defendant, it is necessary to determine whether the filling of the order of Thompson & Co. resulted in the plaintiffs' failure to have the last thirty tons delivered in September.

The rule is that where measures are adopted in good faith solely with the view of the general business of a party and the reasonable necessities of his business, no fault may be found with the manner in which he conducts it. (*Delaware, Lackawanna & Western R. R. Co.* v. *Bowns,* 58 N. Y. 581.)

Bearing this in mind and the propriety of a man conducting his business with reference to its maintenance and development, we are unable to say that the delivery to Thompson & Co. of September fourteenth was a wrong against the defendant. The defendant had had a shipment of meal in accordance with its orders of September ninth and was to have one on September fifteenth. The defendant had meal; and the customer Thompson & Co. had had no compliance with its order. It, therefore, seems that with fifteen days left in the month of September to deliver the full quota of the September order, no valid complaint can be made against the

plaintiffs for non-delivery in September, for such non-delivery was caused by the generally lessened product occasioned by the strike.

The plaintiffs might have expected that the strike would cease in time to permit compliance with the August seventh contract before the end of September.

It is apparent from the general condition of their business that plaintiffs were much behind in the filling of their orders. The plaintiffs had made contracts with various dealers from March 13 to March 24, 1920, calling for the delivery of 1,225 tons of oil meal during August and 390 tons during September, besides contracts dated between July seventh and August twelfth for 240 tons. On August first the plaintiffs were in arrears on deliveries 715 tons. The total tons, therefore, which they were under the necessity of delivering in accordance with their orders during August and September was 2,570 tons.

The plaintiffs produced during August 1,076 tons and in September 953 tons, making a total production of 2,029 tons. So that they were in arrears as to deliveries during all of September and at its close to the extent of 541 tons.

Taking into consideration the arrearages with which the plaintiffs were struggling, we do not think that the defendant had any reasonable grievance growing out of plaintiffs' failure to deliver. It is quite apparent that such failure grew out of differences with their workmen which we are not persuaded it was unreasonable for them in the conduct of their business to have. (*Delaware, Lackawanna & Western R. R. Co.*, v. *Bowns, supra.*)

The contract contemplates and provides for just such a situation. If deliveries are prevented because of such differences, walk-outs and strikes, then a case is made to excuse the plaintiffs for failure to deliver within the specified time. (3 Elliott Cont. § 1913; *Cottrell* v. *Smokeless Fuel Company*, 148 Fed. Rep. 594; *Delaware, Lackawanna & Western R. R. Co.* v. *Bowns, supra.*)

We further think that the delivery made on October fifth on the September agreement was good for the reason that it was made within a reasonable time after the expiration of the time of delivery stipulated in the contract. (*Fish* v. *Hamilton*, 112 Fed. Rep. 742.)

The judgment should be reversed on the law and facts, with costs to the appellants, and judgment directed for the plaintiffs in the sum of $474.64, with interest from November 11, 1920, with costs.

H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK and HINMAN, JJ., concur.

23

Judgment reversed on the law and facts, with costs to the appellants, and judgment directed for the plaintiffs in the sum of $474.64, with interest from November 11, 1920, with costs. The court finds that the defendant failed to perform the contract in refusing to receive the car of oil meal shipped October 26, 1920.