Panzieri-Hogan Co., Inc., Respondent, v. Harry H. Bender, Appellant.

Third Department, May 16, 1923.

Contracts — action to recover balance due on building contract — defense and counterclaim based on delay in completing building — reply set up strike by plaintiff's employees as excuse for delay — strike was caused by general reduction in wages — plaintiff tried to continue work and did so with reduced force — stopping work was result of strike and not lockout — contract did not provide that strike clause should not be effective if strike was caused by plaintiff — plaintiff entitled to recover.

In an action to recover the balance due on a building contract in which the defendant interposed a defense and counterclaim based on the failure of the plaintiff to complete the building within the stipulated time, and the plaintiff replied by alleging, as an excuse for the delay, a strike on the part of its employees, and that under the terms of the contract it was not liable for the delay under the conditions, it appeared that during the contract an association of which the plaintiff was a member reduced the wages of workmen, carpenters and masons, and that as a result the plaintiff's employees stopped work for the purpose of enforcing their demand that the same scale of wages be continued; that the plaintiff endeavored to continue with the work after its employees quit and did so with a reduced force.

*Held*, that the quitting of the workmen was a strike within the meaning of that word as used in the contract and was not a lockout by the plaintiff and, therefore, the strike clause of the contract is applicable.

The contract did not provide that the strike clause should not apply in case the strike was provoked by the voluntary act of the plaintiff, and so the plaintiff may rely upon that clause, he having acted in good faith and upon just and reasonable business principles in reducing the wages, and not having reduced the wages with a view to injuring the defendant.

Accordingly, since the delay was caused by a strike within the contemplation of the contract, any damage which the defendant may have suffered cannot be charged against the plaintiff, and it is, therefore, entitled to recover the full balance due on the contract.

Kiley, J., dissents, with opinion.

Appeal by the defendant, Harry H. Bender, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 14th day of October, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 13th day of October, 1922, denying defendant's motion for a new trial made upon the minutes.

*Visscher, Whalen, Loucks & Murphy* [*Robert E. Whalen* of counsel], for the appellant.

*Thomas F. McDermott*, for the respondent.

Hinman, J.:

This action was brought to recover a balance of $2,011.17, conceded to remain unpaid by defendant to plaintiff upon a con-

tract for building construction. The answer, putting in issue no allegation of the complaint, alleges, by way of defense and counterclaim, that defendant, through plaintiff's failure to complete the building within the stipulated time, sustained damages through loss of rents to an amount equivalent to the balance unpaid upon the contract. The reply, besides putting in issue most of the material allegations of the counterclaim, avers, as an excuse for the delay in the completion of the construction, a strike on the part of the employees of the plaintiff and its subcontractors, absolving it from liability for the delay under the terms of the contract. The case came to us after a former trial in which a verdict was directed for the plaintiff. The question whether a strike had exonerated plaintiff from liability was not reached in our former decision. We held that the amounts of rents lost by defendant in consequence of the delay in completing the building were damages within the contemplation of the parties, recoverable by the defendant, unless it should develop, on a new trial, that plaintiff was relieved therefrom because of a strike. (202 App. Div. 94.)

The decisive question before us now is whether the strike clause of the contract defeated the defendant's right to recover such damages under his counterclaim. The contract provides: " If the said party of the second part shall be delayed in performing said work or furnishing said material by reason of strike or strikes on the part of workmen or employees, or on the part of the workmen or employees of any sub-contractor, then the time for the completion of said work shall be extended for a period equal to the duration of any such strike or strikes."

Plaintiff was a member of the Albany Builders' Exchange composed of various local contractors, while its laborers, carpenters and masons and the workmen of its subcontractors belonged to labor unions which constituted a local association known as the Building Trades Council. By agreement between the Albany Builders' Exchange and the Building Trades Council, in force for the year beginning May 1, 1920, and ending April 30, 1921, to which arrangement the plaintiff was a party as a member of the Exchange, a scale of wages had been established for the year, effective as to the laborers, carpenters and masons of the plaintiff and as to the workmen of its subcontractors. That arrangement was in effect in September, 1920, when the contract between plaintiff and defendant was made. The main portion of the construction was to be completed January 1, 1921, and that was accomplished. The contract provided, however, for a possible suspension of certain work of connecting two buildings, if a specified interference therewith should arise, with the understanding that said work

should not take more than twenty-one working days after notice from defendant to plaintiff to proceed with it. On April 26, 1921, defendant notified plaintiff to proceed to connect the two buildings. April 30, 1921, the time when the wage scale agreement would expire, was approaching and the members of the Albany Builders' Exchange, including plaintiff, agreed among themselves upon a reduced scale of wages which they would pay to laborers, carpenters, masons and other workmen such as were employed by the plaintiff's subcontractors, commencing May 1, 1921. The proposed reduction was the subject of discussion between the contractors and the labor unions, the latter demanding that the old wage scale be extended for another year, to which the plaintiff and the other contractors declined to accede.

During the first four days after defendant notified plaintiff to proceed with the work of connecting the two buildings, plaintiff's men and those of its subcontractors worked in full force. After May first the men did not report for work because work at the old scale of wages was refused for the year then beginning. The strike among the labor unions in the building trades was general throughout the city. This condition lasted until the latter part of July, 1921. For several days after May first plaintiff was unable to obtain any kind of help to carry on the contract. Plaintiff requested the labor unions to furnish men, offering to pay the wages then being offered by the other contractors and any amount additional as might be adjusted later when the strike was settled; but the unions refused unless plaintiff would sign the agreement continuing the old scale of wages for a year. Commencing May fifth plaintiff proceeded with the work with such workmen as it could obtain. They were very few in number, especially at the outset, some experienced and competent and some not. As labor conditions improved and as fast as it could, the plaintiff increased its force and satisfactorily completed the work on July 26, 1921. Subsequent to May 1, 1921, plaintiff did not pay the old scale of wages. It paid the same wages that were paid by other contractors in the city of Albany at the time and the same wages that continued to prevail at the time of the trial. The subcontractors had similar experiences.

No question is raised as to the fact that this disagreement with its employees caused the plaintiff to fail to complete the work within the stipulated time and was sufficient in duration to relieve the plaintiff from liability if it was a strike within the meaning of the strike clause of the contract. The point raised by the defendant is that it was not a strike, but a lockout which plaintiff itself inaugurated; that the delay was caused, not because its

employees had gone on strike for an increase in wages, but solely because plaintiff refused to employ its labor except at reduced pay.

Webster's New International Dictionary defines a "strike" as: " Act of quitting work; * * * such an act done by mutual understanding by a body of workmen as a means of enforcing compliance with demands made on their employer; a stopping of work by workmen in order to obtain *or resist* a change in conditions of employment." A "lockout" is there defined as: " Act of locking out; refusal of an employer to furnish work to employees, used as a means of coercion." The defendant urges that the employees of the plaintiff quit work because their pay was to be reduced, but we think that it is equally just to say that the employees quit work because they could not obtain the continuance of a higher scale of wages than the plaintiff was willing to offer. They stopped work in order to obtain these higher wages or to resist the change in the condition of their employment as to wages which the plaintiff required of them as the condition of their continuance in its employ. It was not a refusal of the plaintiff to furnish work within the meaning of a "lockout." The plaintiff urged them to work but under a changed condition which the men resisted. We cannot see why this was not such a strike as was contemplated by the building contract. The provision of the contract is general in its terms and not limited to any particular kind of a strike. It does not by its terms purport to make any distinction between a strike provoked by the voluntary act of the employer and one instituted by the workmen without such provocation. In the case of *Delaware, Lackawanna & Western R. R. Co.* v. *Bowns* (58 N. Y. 573) the Court of Appeals had under consideration a similar strike clause in a contract. The holding of the court in that case is well expressed in the headnote as follows: " In consequence of a reduction of wages, a strike of the miners and other employees in plaintiff's employ occurred, interrupting its business and preventing it from obtaining all the coal called for. In an action to recover for the coal delivered under the contract, *held*, that the clause was a limitation upon the absolute undertaking to sell and deliver; that plaintiff was not prohibited thereby from conducting its mining operations upon the same general principles it would have been governed by, had the contract not been made, nor was it required to resort to extraordinary or unusual means to prevent strikes, but, by necessary implication, had the right, irrespective of its effect upon the action of its operatives, so long as it was done in good faith, and solely with a view to its general business, to adopt such rules and regulations and pay such wages as were usual,

reasonable and proper under the circumstances; and, it appearing that plaintiff acted in good faith and upon just and reasonable business principles in reducing the wages, that it was not liable to defendants for the damages resulting." We think the case just cited is decisive of the question raised here unless the law as there laid down has been modified by what was said by the Court of Appeals, Judge CARDOZO writing, in the case of *McGovern v. City of New York* (234 N. Y. 377). Carefully distinguishing between things said and things decided we find that in the *McGovern* case the Court of Appeals was interpreting and applying a strike clause which was expressly limited in its scope. In that case the clause itself clearly provided that a strike provoked by the voluntary act of the employer was not a strike within the meaning of that contract. There is no such limitation in the contract with which we are dealing. In the *McGovern Case* (*supra,* at p. 387) Judge CARDOZO says: " The contract is referred to in the complaint as incorporated therein, and a copy was handed up to us on the argument. The plaintiffs misconceive its effect. After declaring that time is of the essence, and providing for liquidated damages for delay, it extends the time for completion in case the contractor shall be actually and necessarily delayed by reason of any labor strike not caused or instituted or provoked by the contractor or his agents." Judge CARDOZO said (p. 388): " They may not set up their own contract with their own employees as an excuse for the nonfulfillment of their duty to another; " but he had in mind the duty of the contractor in that case, under the contract itself, not to cause or provoke a strike by the contractor's voluntary act. In the instant case the parties did not agree in advance to eliminate from mutual consideration the contingency of a strike provoked by the voluntary act of the employer. A strike did occur within the usually accepted meaning of the term and we must hold upon the authority of *Delaware, Lackawanna & Western R. R. Co.* v. *Bowns* (*supra*) that if the plaintiff acted in good faith and upon just and reasonable business principles in reducing the wages, the occurrence was a contingency to which both parties agreed in advance. This was the law of the case as submitted by the trial court to the jury in substantially the language of the Court of Appeals as laid down in the case of *Delaware, Lackawanna & Western R. R. Co.* v. *Bowns* (*supra*). It is immaterial that the effect of the proposed reduction in wages had for its result a benefit to the employer and detriment to the defendant. The uncontradicted proof in the case indicates that the proposed reduction in wages was a matter of the general conduct and management of the plaintiff's affairs upon general principles by which

it would have been governed had the contract with the defendant not been made. The act of the plaintiff, in joining with the other employers in the same line of business to fix a wage scale in the community at the end of a period over which the wage scale had previously been fixed in a similar manner, cannot be challenged as an act of bad faith so far as this defendant was concerned. The plaintiff made no effort to abandon its contract but on the contrary made every effort to conclude it within the shortest time available to it within the circumstances. It offered to its former employees the payment of whatever wage was finally agreed upon between the contending forces upon the final outcome of the strike. This offer was refused by the men. The plaintiff paid to the men it was able to employ the prevailing market rates in the community at the time and the same scale as paid for similar work at the time of the trial. No error was made in charging the jury as to the law of the case and the jury has found a verdict in favor of the plaintiff which we think should not be disturbed. If the trial court was in error with respect to the measure of the defendant's damages for loss of rents, that error becomes immaterial since under our holding the defendant is not entitled to recover any damages.

The judgment and order should be affirmed, with costs.

H. T. KELLOGG, Acting P. J., VAN KIRK and HASBROUCK, JJ., concur; KILEY, J., dissents, with an opinion.

KILEY, J. (dissenting):

This case was before this court on a former appeal (202 App. Div. 94). The facts and principles involved are very fully stated in the opinion; only brief references and recitals will be attempted here. The plaintiff, a contracting corporation, entered into a written agreement with the defendant to reconstruct, rebuild and change, according to plans and specifications furnished with said contract, a building in the city of Albany, N. Y. Said contract provided for a time limit on the work, and clause 8 thereof provided as follows: " In case the party of the first part [who was this defendant] shall sustain any loss by way of damages of any kind by reason of the failure of the party of the second part to fulfill any of the agreements herein contained on its part, such loss or damage shall be deducted from the last payment made to the party of the second part as provided for herein." Before making the contract aforesaid the defendant had rented the building, as it would be after the construction contemplated by the building contract was completed, for a large rental return, said lease and occupancy to commence after the time limit fixed for its completion in said building contract. He also sold said building subject to the

terms of said lease and with reference to said time limit in the building contract. The plaintiff defaulted by not completing the contract within the time limit fixed therein and defendant lost certain portions of the rent as in his lease specified, and had to pay to the subsequent purchasers a like amount while it was kept out of possession by reason of plaintiff's default. When the contract was finally completed there was unpaid to the plaintiff thereon $2,011.17 which was the exact amount of the damage defendant had suffered by reason of plaintiff's default. Under the clause in the building contract above quoted, the defendant withheld such payment to satisfy his loss. The plaintiff brought this action, alleging generally for a balance due on the contract. The judgment demanded was for $2,011.17. The defendant answered substantially admitting the allegations of plaintiff's complaint, and set forth the contract in full as part of his answer, and further allegations of fact constituting his counterclaim. The plaintiff then replied, and set up as a defense to plaintiff's counterclaim the following provision of the contract: " excepting, however, that if the party of the second part [the plaintiff herein] shall be delayed in performing said work or furnishing said material by reason of strike or strikes on the part of workmen or employees, or on the part of the workmen or employees of any subcontractor, then the time for the completion of said work shall be extended for a period equal to the duration of any such strike or strikes," and alleging further that the failure of the plaintiff to complete said work within the time limit fixed by said contract was due to such " strike or strikes." On the first trial the defendant gave evidence substantiating his counterclaim; the court struck out the evidence upon the ground that plaintiff did not have notice of the lease aforesaid and the subsequent sale, and directed judgment for the plaintiff for the full amount claimed. This court held that the trial court fell into error; that the damages proved by the defendant were such as might have been contemplated in making the building contract; that there was no other damage that could have been contemplated; that they were such as might naturally be expected to follow the default; that their nature was definite, and their source not in doubt. We granted a new trial because of the strike clause in the building contract and set up in plaintiff's reply as an affirmative defense to defendant's counterclaim. As the case stood at the time a verdict was directed for plaintiff, there was no reason for withholding the relief prayed for in defendant's answer, except the strike clause in the building contract. There are three questions left for our consideration upon this appeal: *First,* an exception taken to a portion of the judge's charge to the jury; *second,* as to whether

plaintiff excused its default by the evidence given under the strike clause of its contract; and *third*, the effect of an agreement between plaintiff and defendant to take down a certain wall which by the specifications was to be shored up during building operations. As to the first question, the alleged error of the trial court in the charge to the jury. In 202 Appellate Division (*supra*) it was held, as a matter of law, that the amount of the rents lost as a consequence of the failure on the part of the plaintiff to complete the contract within the time limit was the measure of the damage sustained by the defendant, and that, to escape liability therefor, plaintiff must make good its affirmative defense set up in its reply under the strike clause of its contract. The alleged error is found in the charge of the court where it was submitted to the jury to say whether those damages sustained by the defendant were such as would be contemplated in making the contract, and as such might naturally be expected to follow a default. This was further emphasized in other parts of the charge. The exception to such charge presents error which calls for a reversal of the judgment. As to the second question, the defense under the strike clause of the contract. The circumstances are briefly these: The Builders' Exchange at Albany, of which this plaintiff was a member at the time the contract in question was entered into between plaintiff and defendant, had a working agreement with the labor unions representing the different classes of labor employed in building operations; the working agreement was for the term of one year, which period would not expire until May 1, 1921, after the contract in question was executed. The compensation for labor necessary to do the work called for by this contract was as follows: Laborers, seventy cents an hour; carpenters, one dollar an hour; masons one dollar twelve and one-half cents and hour. Plaintiff made its estimate and took into consideration these figures in fixing the amount for which it would do the work when it entered into this contract. Before May 1, 1921, the Builders' Exchange fixed a new rate of wages, a reduction of twenty cents an hour. After May 1, 1921, the men would not work unless they were paid the same rate they were receiving when they commenced work upon the job, and they required a new yearly contract fixing that rate of wage. Plaintiff would not pay and the men would not work. Work stopped. We have this condition, that if the workmen accepted the new rate the plaintiff would increase its profit to that extent on its contract, the defendant would loose nothing, but if they refused to work at the reduced rate, by reason thereof, the defendant would be the only looser. There is involved in this second question the proposition do the circumstances above narrated

constitute such a strike as was contemplated by the clause of the contract above quoted? In other words, because the men would not work unless they could have the same wages they were receiving when they went on the job, and plaintiff insisting on the reduction, would not pay the old rate, a controversy to which defendant was not a party, must he suffer the damage caused by a failure to complete the job within the time limit? The plaintiff cannot set up its contract, or its inability to make a satisfactory contract with its own employees as an excuse for the non-fulfillment of its contract with the defendant. (*McGovern* v. *City of New York*, 234 N. Y. 377.) The plaintiff knew, because it was a party to it, of this inherent weakness in its ability to make a definite and absolute contract, and concealed it from the defendant; it was a constructive fraud upon defendant; plaintiff took the chance and cannot now be heard to complain. The plaintiff urges that what happened, as detailed above, was a strike and the condition contemplated under the strike clause of the contract; the defendant urges it was a " lockout." It may be called either that fancy dictates so long as it was caused by the plaintiff's acts. The result was the same in either view so far as this case was concerned. Plaintiff agreed to do this work within a certain time; it was bound by its contract to fulfill or pay defendant's damage. Default was made because plaintiff refused to pay the wages the workmen were receiving when the job was commenced. It could have averted the strike or lockout by paying the going rate of wage when the work was commenced; the failure to do so was the cause of defendant's loss. Failure to perform is not excused. The third question involves two propositions: A. That the specifications called for the shoring up of a rear wall during operations on that side of the building; that on examination it was found that the wall was too thin to permit of shoring, and that it had to be taken down; this was agreed to by both parties. Although no such defense is pleaded in plaintiff's reply it gave evidence that it took twenty-six or twenty-seven days with three to five men to take it down and rebuild it; that it could have been taken down and rebuilt, if his original men had not refused to work, in fifteen days; that the shoring up contemplated by the specifications would have taken but four days. No evidence was given of increased cost to the plaintiff. Mr. Panzieri testified that no extra charge was made for that work when he had a settlement with defendant as to the amount still unpaid upon the contract, and that he received and accepted the certificate of the architect without any amount included for the extra work; claim for the first time was presented on the second trial of this action. Such change, as was here made, is provided for in the 3d paragraph of the contract; the right of

the contractor to receive compensation for extra work is governed by the last clause of said paragraph as follows: " and the contractor shall present his claim for all such extra work, of whatsoever kind or character, at the first settlement or payment made by the party of the first part [this defendant] after the extra work was executed." Plaintiff's evidence is to the effect that no such claim was made and as a matter of course was not presented. Such charge for extra work could not be allowed under the evidence thereon in this record. (*Fidelity & Casualty Co.* v. *City of Watervliet*, 206 App. Div. 639.)

B. That the delay caused by this change in the work, together with defendant's failure to exercise his right to take over and complete the contract under the provisions thereof, abrogated the time limit therein. Under the provisions of the contract and by reason of the written notice served on the plaintiff on May 9, 1921, I do not accede to that proposition. Even if that view were taken, defendant could still assert and succeed on his counterclaim. (*Crocker-Wheeler Co.* v. *Varick Realty Co.*, 104 App. Div. 568; *Reading Hardware Co.* v. *City of New York*, 129 id. 292.) My conclusion is that defendant has sustained his counterclaim and, it being for the amount unpaid on the contract, it offsets plaintiff's claim for balance unpaid.

The judgment should be reversed and complaint dismissed, with costs.

Judgment and order affirmed, with costs.